[No. D057506. Fourth Dist., Div. One. Dec. 6, 2010.]

In re B.F. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
SARAH F., Defendant and Appellant;
C.D. et al., Interveners and Respondents.

## COUNSEL

Sharyn Leonard, Public Defender, Cristina M. Sanchez, Deputy Public Defender; and Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Tahra C. Broderson, Deputy County Counsel, for Plaintiff and Respondent.

C.D. and S.D., in pro. per., for Interveners and Respondents.

Sharyn Leonard, Public Defender, Cindy A. McCabe, Deputy Public Defender; and Susan Bookout, under appointment by the Court of Appeal, for Minors.

## OPINION

**McCONNELL, P. J.**—Mother Sarah F. appeals the juvenile court's order granting a Welfare and Institutions Code[1] section 827 petition and thus authorizing the release of Sarah's court-ordered psychological evaluation. The petition was brought by C.D. and her husband, S.D. (together, the D.'s), who are the de facto parents of Sarah's minor children, juvenile court dependents B.F. and R.R. (together, the children). Sarah contends the court abused its discretion by allowing the D.'s access to the evaluation. We agree.

### BACKGROUND

In June 2009 the San Diego County Health and Human Services Agency (the Agency) filed dependency petitions for 21-month-old B.F. and two-month-old R.R. The petitions alleged R.R. was left on a dining room table

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise specified.

without proper supervision and was then found on a tile floor, screaming and crying. He had a swollen, cut and bloody lip and a chin contusion. The children were detained in Polinsky Children's Center and then with C.D.[2] In August the juvenile court made true findings on the petitions. The court ordered B.F. placed with Sarah and R.R. placed with Sarah and Timothy. The court ordered family maintenance services.

In December 2009 the Agency filed supplemental petitions and the children were again detained with C.D. The supplemental petitions alleged that in October, the police stopped the car in which Sarah, Timothy and the children were riding. Timothy was arrested for a parole violation and Sarah was cited for possessing drug paraphernalia. In December Timothy pushed and hit Sarah while she was holding B.F. Sarah said Timothy grabbed her by the hair and beat her. Timothy said Sarah tried to hit him. In February 2010 the court made true findings on the supplemental petitions, ordered the children placed with C.D. and ordered reunification services. The court ordered Sarah to undergo a psychological evaluation. The evaluation took place on April 7.

At a hearing on April 19, 2010, C.D. asked for copies of the Agency's reports. The court ordered that the existing reports be made available to the D.'s. The court ordered that any report filed in the future be provided to the D.'s, but allowed objections to be made within 10 days of the filing date. Absent an objection, the report would be given to the D.'s 10 days after its filing. If any party objected to portions of a report, that party would be required to contact the court clerk and ask for a hearing. The court would then hold a hearing to determine whether those portions would be released.

At the April 19, 2010 hearing, Sarah's counsel said she would object to the release of any confidential information concerning Sarah, including the psychological evaluation which had not yet been filed. The court said it would presume Sarah knew when the evaluation and future reports were filed, and it stressed several times that she would have the burden to review them and contact her attorney if she objected to the release of any portion. If Sarah did not object within the time allowed the court would release the material to the D.'s. The court stated the presumption that Sarah knew of the filing could be rebutted only by a showing of good cause.

On April 29, 2010, the D.'s filed a "DEMAND FOR MEDICAL EVALU-ATION AND REPORTS" in the children's cases. The demand did not cite any supporting authority. On May 13 Sarah's counsel filed opposition, which

---

[2] In June 2009 the court found that C.D.'s son, Timothy R., was R.R.'s presumed father. In January 2010, following a paternity test, the court found that Timothy was not R.R.'s biological father. In March the court found that Shawn P. was B.F.'s biological father. The D.'s are not biologically related to the children.

the court deemed timely. The opposition correctly noted that section 827 was the proper avenue for the D.'s request and specifically objected to the disclosure of the psychological evaluation and related material. On May 25 the D.'s filed a section 827 petition for disclosure of the children's juvenile case files, including Sarah's psychological evaluation "and all supporting documents." The D.'s also filed a reply to Sarah's opposition. The petition and reply set forth the D.'s reasons for requesting the files. The reply argued that Sarah's opposition did not comply with the court's order for "specific objections to those portions of the [psychological evaluation] which were claimed to be confidential."

On June 8, 2010, the Agency filed Sarah's psychological evaluation. The court held a hearing that day concerning release of the evaluation to the D.'s. C.D. argued she needed to know the children's "physical history as far as any congenital issues that may develop like heart disease or diabetes" and whether "there's anything that runs in [Sarah]'s line like manic depression, any kind of behavioral disorder, so that I can provide the best mental and physical care to these children." Sarah, the Agency's counsel and the children's counsel opposed the release of Sarah's psychological evaluation. After reviewing the evaluation in camera, the court authorized its release to the D.'s. The court stayed its order until the close of business on June 14 to allow Sarah to petition this court for writ relief.

On June 9, 2010, Sarah filed a notice of appeal from the order granting the D.'s section 827 petition. On June 11 she filed a petition for writ of supersedeas. On June 14 this court stayed the release of Sarah's psychological evaluation pending further order and requested responses to Sarah's petition from all parties. The Agency, the children's trial counsel and the D.'s filed responses. On June 30 this court granted the petition for writ of supersedeas and stayed release of Sarah's psychological evaluation to the D.'s pending resolution of this appeal.

## DISCUSSION

The juvenile court's decision in this case reflects a misapprehension of principles of juvenile dependency law, the rights of de facto parents and the procedures to be followed when the dependency court is presented with a section 387 petition. We therefore summarize those principles, rights and procedures.

■ " 'Dependency proceedings are civil in nature, designed not to prosecute a parent, but to protect the child.' " (*In re Mary S.* (1986) 186 Cal.App.3d 414, 418 [230 Cal.Rptr. 726], quoted in *In re Malinda S.* (1990) 51 Cal.3d 368, 384 [272 Cal.Rptr. 787, 795 P.2d 1244], modified by statute on

another ground as stated in *In re Lucero L.* (2000) 22 Cal.4th 1227, 1240–1241 [96 Cal.Rptr.2d 56, 998 P.2d 1019].) "Except where there is a contested issue of fact or law, the proceedings shall be conducted in an informal nonadversary atmosphere with a view to obtaining the maximum cooperation of the minor upon whose behalf the petition is brought and all persons interested in his or her welfare with any provisions that the court may make for the disposition and care of the minor." (§ 350, subd. (a)(1).) Dependency proceedings are "adversarial in nature" only insofar as the Agency "is advocating a position which, if successful, may result in depriving a parent of his or her constitutional right to parent." (*In re Emilye A.* (1992) 9 Cal.App.4th 1695, 1709 [12 Cal.Rptr.2d 294].)

 De facto parents are not part of any adversarial aspect of a dependency case.[3] " 'De facto parent' means a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period." (Cal. Rules of Court, rule 5.502(10).)[4] "The purpose of conferring de facto parent status is to 'ensure that all legitimate views, evidence and interests are considered in dispositional proceedings involving a dependent minor.' " (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 256 [19 Cal.Rptr.3d 490], quoting *In re Kieshia E.* (1993) 6 Cal.4th 68, 76 [23 Cal.Rptr.2d 775, 859 P.2d 1290].) While de facto parents have "standing to participate as parties" (rule 5.534(e)), their role is limited and they do not enjoy the same due process rights as parents. (*In re Kieshia E., supra*, at p. 77, citing *In re B. G.* (1974) 11 Cal.3d 679, 693, fn. 21 [114 Cal.Rptr. 444, 523 P.2d 244]; *Clifford S. v. Superior Court* (1995) 38 Cal.App.4th 747, 755 [45 Cal.Rptr.2d 333]; compare rule 5.534(e) [de facto parents may be present at the hearing, be represented by counsel and present evidence] with rule 5.534(k)(1)(B) [parents and children have the right to confront and cross-examine the social worker and other witnesses].) De facto parents do not have an automatic right to receive the Agency's reports and other documents filed with the court. (Cf. rule 5.534(k)(2)(A), (3) [parents and children have the right to receive Agency's reports and, "[u]nless prohibited by court order, . . . the right to receive all documents filed with the court"]; rule 5.546(d)(6) [Agency's duty to disclose material and information, "including results of . . . mental examinations," to parents and children].)

---

[3] C.D. is an attorney. She took an adversarial position by acting as Timothy's attorney when he and Sarah sought restraining orders against each other in December 2009. C.D. apparently attached a copy of the July jurisdictional and dispositional report to the documents she filed in the restraining order proceedings. The first page of that report states the report is "Confidential in accordance with Penal Code Section 11167.5 and/or [Welfare and Institutions Code] Sections 827 and 10850."

[4] All rule references are to the California Rules of Court.

■ "It is the express intent of the Legislature 'that juvenile court records, in general, should be confidential.' " (*In re Keisha T.* (1995) 38 Cal.App.4th 220, 231 [44 Cal.Rptr.2d 822], quoting § 827, subd. (b)(1).) Thus, section 827 restricts access to the case file in a juvenile proceeding. That section lists persons entitled to inspect the file without a court order, and a smaller number of persons who are also entitled to receive copies of the file without a court order. (§ 827, subd. (a)(1), (5); rule 5.552(b)(1).) De facto parents are not listed (§ 827, subd. (a)(1)), but they have standing to petition the juvenile court for the right to inspect or copy the case file (§ 827, subd. (a)(1)(P); rule 5.552(b)(3), (c)).

A section 827 petition must identify "[t]he specific records sought" and "describe in detail the reasons the records are being sought and their relevancy to the proceeding or purpose for which petitioner wishes to inspect or obtain the records." (Rule 5.552(c).) To prevail, the petitioner must show good cause. (Rules 5.552(e)(1) [if the petition does not show good cause, the court may deny it summarily], (2) [if petitioner shows good cause, the court may set a hearing].) The petitioner has the burden of proving, by a preponderance of the evidence, "that the records requested are necessary and have substantial relevance to the legitimate need of the petitioner." (Rule 5.552(e)(6).)

■ All interested parties must be given notice and an opportunity to object to the section 827 petition. (§ 827, subd. (a)(3)(B).) "[I]f the court determines that there may be information or documents in the records sought to which the petitioner may be entitled, the . . . court . . . must conduct an in camera review of the juvenile case file and any objections and assume that all legal claims of privilege are asserted." (Rule 5.552(e)(3).) "In determining whether to authorize inspection or release of juvenile case files, in whole or in part, the court must balance the interests of the child and other parties to the juvenile court proceedings, the interests of the petitioner, and the interests of the public." (Rule 5.552(e)(4).) To grant the petition, the court must determine "that the need for discovery outweighs the policy considerations favoring confidentiality of juvenile case files." (Rule 5.552(e)(5).) "The court may permit disclosure of juvenile case files only insofar as is necessary . . . ." (Rule 5.552(e)(6).)

■ In this case, the juvenile court abused its discretion by granting the D.'s petition for disclosure of the children's juvenile case files, including Sarah's psychological evaluation and supporting documents. (*In re R.G.* (2000) 79 Cal.App.4th 1408, 1413 [94 Cal.Rptr2d 818].) While the court's order contemplated the D.'s receipt of a copy of the evaluation, allowing them simply to inspect the evaluation would have been equally erroneous. The D.'s argue the release of Sarah's psychological evaluation was not an

abuse of discretion because, pursuant to Evidence Code section 1017, the evaluation was not privileged. Privilege is not synonymous with confidentiality. (See *In re Tiffany G.* (1994) 29 Cal.App.4th 443, 449, fn. 4 [35 Cal.Rptr.2d 8].)

On April 19, 2010, the court allowed C.D. to make an oral "blanket request" for disclosure of the Agency's reports. Over Sarah's objection, the court granted the motion although C.D. made no showing the reports were necessary or had any "substantial relevance to [her] legitimate need." (Rule 5.552(e)(6).) The court attempted to make the requisite showing on C.D.'s behalf, stating the D.'s had "a significant interest in what happens here," the Agency's reports were "of critical interest to de facto parents, and they should have some access to what's happening with them, and be aware of any significant issues that they should be aware of as de facto parents." The court shifted to Sarah the burdens of discovering when any evaluation or report was filed, of objecting to the disclosure of that item and of requesting a hearing. In the case of the evaluation, to which Sarah had already objected, the court required her to object again.

On April 29, 2010, the D.'s filed an all-encompassing "demand" for "any and all psychological testing or written reports from [the Agency] or any other agencies regarding" the children. The demand was unaccompanied by any showing of necessity or substantial relevance.

Finally, on May 25, 2010, the D.'s filed a section 827 petition.[5] The petition stated the D.'s needed the Agency's reports and Sarah's psychological evaluation to protect the D.'s due process rights, prepare for litigation and cross-examination, "rebut [Sarah's] history and/or allegations," "engage in appropriate rearing of the children," and obtain "information bearing on the children's current issues and fears and behavior." The D.'s reply to Sarah's opposition, filed concurrently with their petition, stated the children's best interests and "their future upbringing" required that the D.'s "know the extent of the abuse and the motivation therefor[]" and be "aware of all potential detrimental influences"; "[i]n order to protect the children, the foundation for the examining doctor's opinion must be made known"; "[a] psychologist['s] report based on false statements should not be the basis of custody"; and the D.'s could rebut false statements Sarah gave to the examining psychologist.[6]

---

[5] The petition potentially sought matters that had not been filed, in that it requested Sarah's psychological evaluation "and all supporting documents."

[6] Relying on *In re Matthew P.* (1999) 71 Cal.App.4th 841 [84 Cal.Rptr.2d 269], the D.'s argue that as de facto parents, they will "have the right to . . . cross-examine at dispositional

On June 8, 2010, the court ignored the D.'s duty to identify "[t]he specific records sought." (Rule 5.552(c).) The court noted that the D.'s petition "asks for disclosure of the entire case file" and remarked to C.D., "I'm quite sure you really don't want that much material, do you?" C.D. said no. The court also ignored the D.'s burden of proving it was necessary for them to see Sarah's psychological evaluation and the evaluation had "substantial relevance to the[ir] legitimate need." (Rule 5.552(e)(6).) Instead, the court shifted the burden to Sarah to prove her psychological evaluation should not be released and remarked that her objection to the release "appears to lack specifics." The court demonstrated a misunderstanding of the role of de facto parents and of the fundamental nature of dependency proceedings still in the reunification stage. The court characterized the D.'s as "principal player[s]" and "significant participants" in the case, entitled to "full participation." The court referred to the possibility the upcoming six-month review hearing would be adversarial, and asked, rhetorically, "why it wouldn't be appropriate for those who would be taking positions or offering opinions or suggestions [to] be privy to all of the information that everybody else has."

In balancing the disparate interests, the court elevated the D.'s interests to those of the parents, failed to consider Sarah's interests and concluded without basis that the children's interests required disclosure of the psychological evaluation. Any balancing must be guided by the principle that " '[f]irst, and foremost, the court's discretion must be directed at determining what is in the best interests of the minors, for that obviously is its primary concern at all times in the juvenile proceeding.' " (*In re Keisha T., supra*, 38 Cal.App.4th at p. 239, quoting *San Bernardino County Dept. of Public Social Services v. Superior Court* (1991) 232 Cal.App.3d 188, 207 [283 Cal.Rptr. 332].) There is no conceivable way that allowing the D.'s access to Sarah's psychological evaluation would have furthered the children's best interests. The children had able trial counsel, acting both as attorney and guardian ad litem, to protect their interests. Moreover, release of a parent's psychological

hearings, like the next juvenile court hearing scheduled in this case." The dispositional hearing took place in August 2009, well before the hearing on the D.'s section 827 petition. As noted above, at the time of the latter hearing, the next scheduled hearing was the six-month review hearing.

In *In re Matthew P., supra*, 71 Cal.App.4th 841, the K.'s, who were the de facto parents and former foster parents of two boys, appealed an order denying their section 388 petition. The section 388 petition sought to regain placement. (*In re Matthew P.*, at pp. 844–845.) The reviewing court reversed, concluding the K.'s had the due process right to confront and cross-examine witnesses. (*Id.* at pp. 845, 850–851.) The court stated, "In the context of this section 388 hearing, we must balance the K.'s interest as de facto parents in regaining custody . . . and in telling their side of the story about what they believe is the best interest of the boys against the government's interest in serving the best interests of the boys by resolving dependency matters expeditiously and allowing the juvenile court wide latitude to control dependency proceedings." (*In re Matthew·P.*, at p. 851.) *In re Matthew P.* is distinguishable from the instant case. The D.'s were not seeking to regain placement.

evaluation to persons who may prove to be only temporary caregivers could ultimately embarrass and distress the children.

Nor did the D.'s have any legitimate interest in seeing the evaluation. They did not need the evaluation to provide care for the children. Insofar as the D.'s were interested in adopting the children, that interest was not ripe for presentation to the court, as the case was still in the reunification phase.[7] It was not the D.'s function, as de facto parents, to rebut information Sarah gave the psychologist. The psychologist would have been able to determine the veracity of the information Sarah provided by comparing it to information from the Agency, by observing her demeanor and through the psychological testing itself. The social worker would furnish a further level of scrutiny by reviewing the evaluation and comparing it to the Agency's knowledge of Sarah's circumstances. Furthermore, C.D. had provided information to the Agency concerning Sarah, and there was nothing to prevent her from continuing to do so. Insofar as the D.'s sought information about any physical or mental illness to which the children might be biologically susceptible, the D.'s had access to such information in previously filed reports. The children's physical health was safeguarded by regular medical care. Any crucial information regarding their psychological health, whether derived from Sarah's psychological evaluation or elsewhere, could be communicated to the D.'s through the Agency, if appropriate. In any case, the D.'s had known Sarah since before R.R.'s birth. C.D. claimed the D.'s were "intimately familiar with the children's" and Sarah's histories.

It is difficult to imagine a matter more private than a psychological evaluation describing intimate personal details, thoughts and feelings. (See *In re Eduardo A.* (1989) 209 Cal.App.3d 1038, 1042 [261 Cal.Rptr. 68].) Because Sarah's evaluation was court ordered, she could not have expected it would be kept from the court, the Agency or counsel for the Agency, for the children or for the children's fathers. She had the right, however, to expect that the evaluation would not be disseminated to others. Indeed, the first page of the evaluation states: "The following information . . . is to be observed as strictly confidential and is to be made available only to duly authorized persons. Details in this report are not to be given verbatim to the interviewee, members of his/her family or other non-mental health professionals, without a court order and qualified professional psychological interpretation and support."

---

[7] In December 2009 C.D. said her neighbor was interested in adopting the children. C.D. also expressed an interest in adopting the children herself. If parental rights are eventually terminated, the Agency will provide prospective adoptive parents with information concerning hereditary conditions. (E.g., Fam. Code, §§ 8608, 8706, 8817, 8909.)

## DISPOSITION

The order granting the section 827 petition is reversed. The stay granted on June 30, 2010, is vacated.

Huffman, J., and Aaron, J., concurred.