Filed 10/24/13  In re C.S. CA2/1
Mod order dated 10/23/13 and unmodified opinion attached
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re C. S., a Person Coming Under the Juvenile Court Law. | B245831 |
| _____ | (Los Angeles County Super. Ct. No. CK85735 ) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
|     Plaintiff, | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
|     v. | |
| TIFFANY B. et al., | |
|     Defendants and Respondents. | |
| D.L. et al., | |
|     Objectors and Appellants. | |
| C. S., | |
|     Respondent. | |

THE COURT:

It is ordered that, in the opinion filed herein on October 2, 2013, Respondents' counsel's name on the caption page of the opinion shall be modified to read:

Marsha F. Levine, under appointment by the Court of Appeal, for Defendants and Respondents Mother Tiffany B. and Father Daniel S. and Respondent Minor C. S.

There is no change in the judgment.

NOT TO BE PUBLISHED.


ROTHSCHILD, Acting P. J.   CHANEY, J.   JOHNSON, J.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re C. S., a Person Coming Under the Juvenile Court Law. | B245831 |
| | (Los Angeles County Super. Ct. No. CK85735 ) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
|     Plaintiff, | |
|     v. | |
| TIFFANY B. et al., | |
|     Defendants and Respondents. | |
| D.L. et al., | |
|     Objectors and Appellants. | |
| C. S., | |
|     Respondent. | |

THE COURT:

It is ordered that the opinion filed herein on October 2, 2013, be modified as follows:

On the first page of the opinion, the middle initial in counsel's name (listed as Martha S. Levine) is corrected to read:

Martha F. Levine, under appointment by the Court of Appeal, for Defendants and Respondents Mother Tiffany B. and Father Daniel S. and Respondent Minor C. S.

There is no change in the judgment.

<u>NOT TO BE PUBLISHED</u>.

ROTHSCHILD, Acting P. J.          CHANEY, J.          JOHNSON, J.

2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re C. S., a Person Coming Under the Juvenile Court Law. | B245831 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff,<br><br>        v.<br><br>TIFFANY B. et al.,<br><br>        Defendants and Respondents.<br><br>D.L. et al.,<br><br>        Objectors and Appellants.<br><br>C. S.,<br><br>        Respondent. | (Los Angeles County Super. Ct. No. CK85735) |

APPEAL from an order of the Superior Court of Los Angeles County.  Sherri Sobel, Juvenile Court Referee.  Affirmed.

Law Offices of Angela Pierce di Donato and Angela di Donato for Objectors and Appellants O.L. and D.L.

Marsha S. Levine, under appointment by the Court of Appeal, for Defendants and Respondents Mother Tiffany B. and Father Daniel S. and Respondent Minor C. S.

D.L. and O.L., whom the juvenile court named as de facto parents of C. S., appeal from the order granting the Welfare and Institutions Code section 388[1] petitions of C.'s mother (Tiffany B.) and father (Daniel S.), returning the child to her parents' care and taking the section 366.26 hearing off calendar. The de facto parents contend that the court erred by granting the section 388 petitions because mother and father did not show a change of circumstances such that the best interests of the child favored a return to their care. They also contend that the court erred by denying their request under section 827 to review the file in C.'s dependency proceeding and by declining to appoint counsel for C. separate from the attorney representing her older sibling and half-sibling. We disagree with the contentions of the de facto parents and thus affirm the order.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

On January 27, 2011, the Department of Children and Family Services (DCFS) filed a section 300 petition against mother and father as to C., who was four days old. At the time, C. had two siblings, a half-sister (almost four years old) with whom she shares the same mother and a full sister (approximately 17 months old) with whom she shares the same mother and father. Both siblings previously were removed from their parents' care and living with the half-sister's paternal grandparents and aunt when C. was born, although the court had yet to adjudicate the section 300 petition as to them.

The petition as to C. contained three allegations under section 300, subdivision (b): (1) "On 01/23/2011, the child . . . was born suffering from a detrimental condition. Such condition consists of a positive toxicology screen for amphetamine, methamphetamine and marijuana. On 01/23/2011, . . . mother . . . had a positive toxicology screen for amphetamine, methamphetamine and marijuana at the time of the child's birth. The child's father . . . knew that the mother was abusing illicit drugs and failed to take action to protect the child. . . ." (2) "The child['s] . . . mother . . . has a

---

[1] Statutory references are to the Welfare and Institutions Code.

[2] DCFS elected not to take a position on the appeal. Mother, father and C. are respondents in the appeal.

history of substance abuse and is a current abuser of amphetamine, methamphetamine and marijuana, which renders the mother incapable of providing the child with regular care and supervision. The mother abused illicit drugs during the mother's pregnancy with the child. On 12/10/2010, the mother had a positive toxicology screen for amphetamine and methamphetamine. On 12/10/2010, the mother had a positive toxicology screen for amphetamine, methamphetamine and marijuana. The mother was frequently under the influence of illicit drugs while the child's siblings . . . were in the mother's care and supervision. The mother has a criminal history of Driving Under the Influence/Refuse Test and Use/Under the Influence of a controlled substance. . . ." (3) "The child['s] . . . father . . . has a history of marijuana abuse and is a current abuser of methamphetamine and marijuana, which renders the father incapable of providing the child with regular care and supervision. On 12/10/2010, the father had a positive toxicology screen for amphetamine and methamphetamine. . . ."

At the detention hearing, also on January 27, the juvenile court found a prima facie case for detaining C., no reasonable means to protect the child without removal and reasonable efforts to prevent or eliminate the need for removal. The court vested temporary placement and custody with DCFS and granted mother and father monitored visitation at the hospital where C. remained.

By the time of the adjudication hearing on February 8, DCFS placed C. in foster care with the couple who ultimately would become her de facto parents. The juvenile court sustained the allegations under section 300, subdivisions (b), against mother and father and declared C. a dependent of the court. The court granted monitored visitation for mother and father and ordered them to participate in individual, parenting, drug and alcohol counseling and random drug and alcohol testing. C.'s siblings also were declared dependents of the court and remained placed with her half-sibling's paternal grandparents and aunt.

At the section 366.21, subdivision (e), review hearing, on September 8, the juvenile court found that mother was in partial compliance with the case plan and that

3

father was not in compliance with the case plan. The court terminated family reunification services and set a section 366.26 hearing for January 10, 2012.

On January 10, the date of the scheduled section 366.26 hearing, mother filed a section 388 petition as to her three daughters, including C. Mother requested that the juvenile court take the section 366.26 hearing off calendar. She asked for the children to reside with her or, alternatively, any form of family reunification services. According to the petition, "Mother has completed parenting—she is currently residing in a residential drug program . . . . She has been sober for approximately 5 months with clean urinalysis. [Mother's] visitation with children has been consistent." A letter submitted along with the petition indicated that mother was participating in the first of three phases at a long-term residential treatment program for substance abuse. Mother completed a parenting class through the program, and her counselor reported that mother's visits with her children had "been positive for both mother and children."

Father filed a section 388 petition on January 10 as well. His petition, addressing his two daughters, C. and her full sibling, also requested a change to the order terminating family reunification services and setting a section 366.26 hearing. According to father's petition, he was "participating and progressing in an all[-]inclusive rehabilitation program where he is taking classes in drug rehabilitation[,] where he has been testing negative for substance abuse, where he also attends parenting and domestic violence classes. Father visits regularly where visits have been appropriate." A letter accompanying father's petition indicated that father was in a treatment program and had "shown a considerable amount of growth since entering [the] . . . program on 12/05/2011. He is of great service to this house and his fellow resident[s] [and] staff. He participates in all our groups designed to teach individuals about the disease concept of addiction and attends 12 step meetings on a daily basis. All random tests for substance abuse have been negative." (Emphasis omitted.) Like mother, father requested an order returning his children to him or reinstitution of family reunification services.

The juvenile court ordered a hearing on the section 388 petitions for March 8 and required DCFS to address the petitions. DCFS reported that it had interviewed mother,

4

who was expecting her fourth child in April. Both mother and father continued in their drug treatment programs. Mother was in phase two of her three-phase program. DCFS recommended denial of the section 388 petitions, as mother and father "have demonstrated in the past a pattern of non-compliance as a result of their drug addiction." DCFS indicated that, although mother and father were in treatment, neither had completed a program. Moreover, "[i]t has . . . been reported that the child C. has been having a hard time bonding with the parents in that she has cried for her caretakers at the time of visits."

At the hearing on March 8, the juvenile court received proof of enrollment with an American Indian tribe based on mother's heritage. The court found C. and her siblings fell within the purview of the Indian Child Welfare Act (ICWA). The court transferred the matter to a courtroom hearing ICWA matters and rescheduled the hearing on the section 388 petitions for April 9.

On April 9, the juvenile court continued the matter to May 24 for notice to be given to the Rosebud Sioux Tribe. In advance of the May 24 hearing, DCFS submitted a report indicating that mother had given birth to her fourth daughter on April 10. The child, subject to a non-detain petition by DCFS, was residing with mother at her inpatient program and doing well in mother's care. In an interview with DCFS, mother admitted her substance abuse history and stated "that she is determined to get all her children back and that she is very happy that she is able to have her [youngest] daughter . . . [with her]. Mother state[d] that she has been and will continue to be in her programs and maintain sobriety." Father reported to DCFS that he had "a substance abuse history and state[d] that this is not the case in his life anymore. The father stated that he is determined to maintain custody of [his] newborn [daughter] and to get his other children back home with him. . . ." "Mother's substance abuse counselor . . . report[ed] that mother has been observed to be a good and attentive mother. [The counselor] report[ed] that up to this point mother has been successful in her program[,] which she will complete in September 2012." Father's substance abuse counselor "stated that the father has been successful in his six[-]month[,] in-patient program[,] which he will complete in a month.

5

[The counselor] reported that the father has demonstrated to be able to maintain sobriety for the rest of his life. Father will reportedly [go] to a transitional shelter and continue[] to voluntarily work at the program . . . ." At the May 24 hearing, the court continued the matter to June 27.

On June 27, DCFS reported that C.'s placement had been approved as an adoptive home. The juvenile court granted mother and father, in addition to their monitored visitation, unmonitored or "very loosely monitored" visits at their respective programs. The court continued the matter to July 30.

On July 19, C.'s foster parents, who had retained counsel, filed a motion for status as de facto parents. They also filed a request pursuant to section 827 for disclosure of the juvenile court file. According to counsel, "I must know what is in the legal file so that I may adequately protect my clients' interests and assist the court in determining what orders are in the best interest of the minor. Without access to the file, my clients would be disadvantaged at this critical hearing [on the section 388 petitions]. They have cared for C. since she was 4 days old and are committed to providing her with a permanent home and I need all of the information available to the court in order to represent them." On July 23, the court granted the foster parents status as de facto parents.

In advance of the July 30 hearing, DCFS reported that, "[a]t this time Mother does not have stable housing, and Father's current housing would not be appropriate to house the children. . . . Mother is still in her program and has not completed a full year of sobriety. Father has only completed a 6 month program. [¶] Mother plans that if the children are reunified with her that her next step would be to find a program that would house her and her four children." DCFS continued to recommend adoption as the most appropriate plan for C., as well as for her older sibling and half-sibling. The July 30 hearing was continued to September 25.

On September 25, the juvenile court received information that Mother had completed her inpatient program and had been accepted to a transitional housing program. A psychologist hired by mother's counsel to conduct a "'bonding study'" with respect to mother and her children noted that "mother is clearly bonded to all of her

6

children and they to her. . . . [¶] The situation with C. is unfortunately much more difficult and complex. . . . [¶] . . . [¶] . . . C. appears to have some definite separation anxiety, which is not surprising under the circumstances. However, while it starts with being separated from her foster parents, her own mother is able to allay that anxiety with her. Some children would not be comforted by their own mother in that situation, which could obviously have fairly serious implications for the dispositional possibilities. But that is not the case here . . . . [¶] . . . [T]his is a rather unfortunate, complex, difficult situation, and . . . the sooner a decision is made, the better for everyone involved. If the Court should decide that there are not any really good reasons to consider reunification, then we need to formalize and make permanent the primary bonds that already exist. However, if the Court should decide that there are some good reasons to consider reunification, then that is probably something that could be reasonably worked out. It will not be easy or done without some definite risk, but it most likely could be worked out, especially if the foster-adopt parents really are good people, who will therefore do everything in their broken[-]hearted power to make it the least stressful as possible on this child." The court continued the matter to October 12 to address the de facto parents' request for access to the court file and to October 29 for consideration of the section 388 petitions. This continuance allowed an expert from the Rosebud Sioux Tribe, who had reported that mother was enrolled in the tribe and that ICWA applied to the matter, to conduct an investigation. On October 12, the juvenile court denied the de facto parents access to the court file, finding they had no right under section 827 to review the file.

Before the October 29 hearing, the Rosebud Sioux Tribe filed a notice of intervention in the matter and reported that C. and her sisters were eligible for enrollment in the tribe. The juvenile court granted the intervention request on October 26. An Indian expert witness submitted a declaration in lieu of live testimony in which she indicated that she had "spoken with the Rosebud tribal representative and has . . . confirmed from [the tribe] that the mother is enrolled and that [the tribe] desire[s] to intervene by following the case to observe the progress of the mother." According to the expert, "[i]t appears that the mother is progressing toward her goal to become drug free,

7

and is planning to stay in her inpatient program, obtain housing that will allow her to have her children with her while she works through the program. The mother stated that she has expanded visits with her children and hopes to reunify with them all. The mother states that she has sent in the applications for her children's enrollment with the tribe. The mother stated that she is testing drug free. These actions constitute the mother's attempts to regain her children and become a fully functioning adult. [¶] The [expert] believes that these actions merit further efforts by the agency to ensure that the mother is given the opportunity to fully recover. Time frames are not rigid and in such circumstances cases are extended to provide services to a parent who shows potential for change. In this case, because ICWA was not addressed [at the outset], it is even more important to provide the active efforts for this family that were not previously made, to work with the family and the Rosebud Nation to enroll the children and to attempt to reunify the Native American family. [¶] . . . [T]his mother is . . . progressing and with active efforts this family could stabilize and reunification could occur." (Emphasis omitted.)

At the October 29 hearing, the juvenile court heard evidence and argument from counsel and reviewed exhibits. The court granted the section 388 petitions filed by mother and father, concluding, "We have an American Indian child. That's different. We have siblings who are with relatives. That's different. We have a new baby who has been safely in the mother's care since the [non-detain] petition was filed. That's different. So, when you say that the children who are placed with foster parents at birth, that is their parent, the parent that is there night and day, you are correct, in every case, that's correct. But the point of this is what happens to parents in the part that we call reunification? Where at some point do the parents earn the right to become those people? Where is that transference into being able to be a parent? Now, with the two other children . . . , they are with relatives. Those relatives are glad to step back and be relatives. If they need to adopt, they will. But the fact is they are grandparents. They prefer to be grandparents. I have two parents in complete compliance with their original case plan and American Indian. As to [C.'s older sibling and half-sibling], there's no

8

question there are changed circumstances here.  The issue is best interest and I find it's in the best interest of [the older sibling and half-sibling] to grant the 388 and place the children home of parents:  mom for [the half-sibling and sibling], dad and mom for [the sibling].  We've already taken [the baby] off the track [by dismissing the non-detain petition as to her]. . . .  [C.] is American Indian.  She has three siblings.  Those siblings are going home. . . .  I am telling you, from my heart, an American Indian child belongs in an American Indian home, especially when that home has siblings in it and parents who are appropriate.  There is no question that ICWA requires that I do what is right under ICWA; that I do what's right for this family, understanding and knowing that C. loves [her de facto parents] both as a primary attachment. . . .  I'm granting mother['s] and father's 388 as to C., finding there are changed circumstances and that it is in the child's best interest to be returned to her parents."  The court directed mother and father to meet with C.'s doctors, ordered C. released to mother and father and set a transition schedule for her care.  The de facto parents filed a notice of appeal on November 27.

While the appeal was pending, at a section 364 reviewing hearing on April 29, 2013, six months after the granting of mother's and father's section 388 petitions, the juvenile court terminated jurisdiction over C.  The court found that conditions no longer exist to justify maintaining jurisdiction over C. and ordered C. to remain released to mother and father.

DISCUSSION

The de facto parents contend that the juvenile court erred by granting the section 388 petitions and returning C. to the care of mother and father. Assuming that the issue is not moot based on the court's termination of jurisdiction over C. and the de facto parents' failure to appeal from that order and that the de facto parents have standing to appeal from the order granting the section 388 petitions, we disagree with their contention.

Section 388, subdivision (a), provides in pertinent part that: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." "At a hearing on a motion for change of placement, the burden of proof is on the moving party to show by a preponderance of the evidence that there is new evidence or that there are changed circumstances that make a change of placement in the best interests of the child. [Citations.] [¶] After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child. [Citation.] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) A section 388 "petition is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Stephanie M.*, at p. 318.)

The juvenile court did not abuse its discretion by granting the section 388 petitions of mother and father. Although mother and father had not complied with the case plan at the time the court terminated reunification services, the court was within its discretion to

10

conclude that mother and father had demonstrated by a preponderance of the evidence changed circumstances that made a change in placement in C.'s best interests. At the time the court heard the section 388 petitions, both mother and father had completed a treatment program and maintained their sobriety such that placing C.'s siblings in their care was appropriate, even though reunification services previously had been terminated. Despite having a primary bond with the de facto parents, C. had a bond with mother, father and her siblings as well. Furthermore, as the court found, the efforts to provide remedial services and rehabilitative programs to mother and father had been successful. (See § 361.7, subd. (a) [relating to termination of parental rights or involuntary foster care placement of Indian child].) True to the claims of the de facto parents, C. might experience a transition period in returning to her mother's and father's care, and mother and father would have to adjust to providing for her medical needs and taking care of four young children. Such circumstances, however, do not detract from the showing of changed circumstances made by mother and father or the court's discretionary finding that placing C., an Indian child, with her mother, father and siblings was in her best interests.

The de facto parents also contend that the juvenile court erred by denying their request under section 827 to review C.'s file in the dependency proceeding before the hearing on the section 388 petitions. The court did not abuse its discretion by denying the request. (See *In re B.F.* (2010) 190 Cal.App.4th 811, 814 [evaluating ruling on de facto parents' request for file in dependency proceeding for abuse of discretion].) "De facto parents are not part of any adversarial aspect of a dependency case. '"De facto parent" means a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period.' [Citation.] 'The purpose of conferring de facto parent status is to "ensure that all legitimate views, evidence and interests are considered in dispositional proceedings involving a dependent minor."' [Citations.] While de facto parents have 'standing to participate as parties' [citation], their role is limited and they do not enjoy the same due process rights as

parents. [Citations.] De facto parents do not have an automatic right to receive [DCFS's] reports and other documents filed with the court. [Citations.]" (*Id.* at p. 817.) The court allowed C.'s de facto parents to present evidence and argument by their counsel at the hearing on the section 388 petitions. Nothing suggests that their receipt of the file in the dependency proceedings was necessary for them to fulfill their role to bring all legitimate views, evidence and interests before the court.

The de facto parents additionally contend that a conflict of interest existed in having the same minors' counsel represent C. as well as her older sibling and half-sibling. That contention also is unpersuasive. C.'s placement with the de facto parents essentially since birth, while her older sibling and half-sibling lived with relatives, does not amount to a conflict such that counsel did not adequately represent C.'s interests. (*In re Barbara R.* (2006) 137 Cal.App.4th 941, 953 ["conflict arises where minor's counsel seeks a course of action for one child with adverse consequences to the other"].) Moreover, any error in failing to appoint separate counsel for a minor is reversible only if a reasonable probability exists that the outcome would have been different had the minor been represented by separate counsel. (*In re Celine R.* (2003) 31 Cal.4th 45, 60.) No such probability exists here.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


ROTHSCHILD, Acting P. J.

We concur:


CHANEY, J.                                    JOHNSON, J.


12