Filed 4/15/15  In re Kylee R. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re KYLEE R., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D067038 |
| Plaintiff and Respondent, | (Super. Ct. No. NJ14628) |
| v. | |
| ALLIE R., | |
| Defendant and Appellant; | |
| HARRY R. et al., | |
| Movants and Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, Carol Isackson, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

McGlinn & McGlinn, Michael D. McGlinn and Ryan M. McGlinn for Movants and Respondents.

Allie R. appeals the denial of her modification petition (Welf. & Inst. Code, § 388)[1] which sought termination of the de facto parent status of Harry R. and Edith R., the paternal grandparents[2] and former caregivers of Allie's daughter, Kylee R., a juvenile court dependent. Allie contends the R.s' de facto parent status was no longer necessary to furnish the court information uniquely in their possession or to otherwise serve Kylee's best interests. The R.'s and the San Diego County Health and Human Services Agency (the Agency) submit the matter to this Court. We affirm.

BACKGROUND

In April 2012, the Agency filed a dependency petition for one-year-old Kylee. The petition alleged there were marijuana, pills and drug paraphernalia accessible to Kylee in the family home. Kylee was detained at Polinsky Children's Center for two days, and then detained with the R.'s. At the jurisdictional and dispositional hearing in May, the petition was amended by dismissing the above allegation and adding an

---

[1]    Further statutory references are to the Welfare and Institutions Code.

[2]    We refer to Harry R. as the paternal grandfather and both grandparents together as the R.'s.

allegation that Allie and Kylee's father, Harry R. III,[3] used heroin and methamphetamine and cared for Kylee while under the influence of drugs.  The court made a true finding on the amended petition, ordered Kylee placed with relatives and ordered reunification services for the parents.  In August, the R.'s filed a request for de facto parent status.  In September, the court granted the request.  The paternal grandfather attended nearly every hearing in this case.

At the six-month hearing in November 2012, the court terminated Allie's services.  In May 2013, the court granted Allie's modification petition which sought reinstitution of her services.  In August, Kylee was removed from the R.s' home because they were interfering with reunification and visitation.  Kylee was placed with a different relative.  In September, Kylee began a 60-day trial visit with Allie.  The court ordered reasonable, supervised visits for the R.'s, and gave the social worker discretion to allow unsupervised visits with 48 hours' notice to all counsel.  In October, the court ordered Kylee placed with Allie.

In December 2013, Harry was charged with possessing methamphetamine.  In January, the criminal court revoked Allie's probation.  Based on those events and others, the R.'s filed a section 388 modification petition requesting termination of the parents' reunification services and the setting of a section 366.26 hearing.  In February, the court denied the petition.

---

3      We refer to Harry R. III as Harry and to both Allie and Harry together as the parents.

The R.'s had supervised visits with Kylee until they went to their home in Florida the day after Christmas in 2013. The R.'s returned to California in early February 2014. During their absence, they had no visits with Kylee.[4] In February 2014, supervised visitation was terminated. In July, Allie filed her section 388 modification petition seeking termination of the R.s' de facto parent status.[5] When the R.'s returned to California, they tried to resume visitation, but were unsuccessful until May. There was another visit in June or July, facilitated by the maternal grandmother; Kylee showed some uncertainty for a few minutes, but then jumped into the R.s' arms. A third visit took place in October, the day before the hearing on Allie's section 388 modification petition. At the beginning of that visit, Kylee jumped out of the car and yelled for "Papa," her name for the paternal grandfather.

Meanwhile, in April 2014, Allie was arrested for driving under the influence of alcohol and driving with a suspended license. In May, a criminal complaint was filed. In June, Allie appeared in court for a probation violation hearing in another criminal case. The paternal grandfather learned of the criminal cases, attended the hearings and relayed the information to his counsel in the instant case.[6]

---

[4]     On previous trips, the R.'s had been allowed to take Kylee with them.

[5]     The Agency also filed a modification petition seeking vacation of the order granting the R.'s de facto parent status, but withdrew the petition after the court ruled that Allie had standing to file her modification petition.

[6]     The paternal grandfather testified he did not recall how he learned of Allie's arrest for driving under the influence. He testified the district attorney contacted him whenever Allie had a hearing in criminal court. The R.'s also obtained information from Harry.

In October 2014, the Agency filed a supplemental petition (§ 387) requesting Kylee be placed with a relative. The supplemental petition alleged Allie tested positive for methamphetamine and would be remanded into custody in November for one year. Kylee was detained with a paternal aunt. In October, the court denied Allie's section 388 modification petition.

DISCUSSION

" ' "De facto parent" means a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period.' [Citation.] 'The purpose of conferring de facto parent status is to "ensure that all legitimate views, evidence and interests are considered in dispositional proceedings involving a dependent minor." ' " (*In re B.F.* (2010) 190 Cal.App.4th 811, 817, fn. omitted.) The de facto parent doctrine is liberally applied to achieve that purpose. (*In re Kieshia E.* (1993) 6 Cal.4th 68, 76.) A party requesting termination of de facto parent status "has the burden of establishing a change of circumstances which no longer support the status . . . ." (*In re Patricia L.* (1992) 9 Cal.App.4th 61, 67.) We review the denial of such a request for abuse of discretion. (See *In re Jacob E.* (2004) 121 Cal.App.4th 909, 919 [determination to grant or deny de facto parent status is reviewed for abuse of discretion].) We also review the denial of a section 388 modification petition for abuse of discretion. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415.) Section 388 allows the juvenile court to modify an order if a person having an interest in a dependent child establishes, by a preponderance of the evidence, that

changed circumstances exist and the proposed modification would promote the child's best interests. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)

Allie's section 388 modification petition alleged two circumstances that had changed since the September 2012 order granting the R.'s de facto parent status. First, since October 2013, the R.'s had "initiated a coordinated campaign against reunification between [Kylee] and [Allie] culminating with the filing of a [section] 388 [petition] asking that family reunification services be terminated . . . and a [section] 366.26 hearing be set." Second, in July 2014, the Agency recommended that Kylee remain placed with Allie. Allie's section 388 modification petition alleged that terminating the R.s' de facto parent status was in Kylee's best interests because she "remains in a stable, loving placement with [Allie], who has been fully engaged in reunification services since 2012 [and the] [c]ase is on track to terminate jurisdiction with reunification."[7]

The court found there had been a change in circumstances since the R.'s attained de facto parent status, but the change was not favorable to Allie's position. In the spring or summer of 2013, there was a dispute between the R.'s and the Agency regarding unsupervised visits for the parents. The R.'s were concerned about the parents' substance abuse and in that regard "were a few steps ahead of the Agency." In August, the dispute and the R.s' alleged failure to further reunification led the Agency to remove Kylee from the R.s' home. In October, Kylee was placed with Allie; a year later, Kylee was removed due to allegations of Allie's substance abuse and inability to provide proper care.

---

7       Of course, by the time of the hearing on Allie's section 388 modification petition, Kylee had been detained and was no longer in Allie's home.

The court found it was clearly in Kylee's best interests for the R.s' de facto parent status to continue. First, the R.'s had "been in a position to provide unique information to the court, both about [Kylee] and about the parents" and had "done so for over a year." The R.'s had informed the court about Harry's failure to show for visits, stay in touch and return calls and recently had shared their concerns regarding Allie's sobriety. Second, Kylee had lived with the R.'s, off and on, from birth until she was two years seven months old, and they had developed a strong bond. The bond remained, although Kylee had not lived with the R.'s for 14 months. The R.'s had not been accorded the visitation the court ordered in August 2013, so it was not their fault the bond had weakened, and with renewed visitation the bond would continue. Kylee was enduring a recent change in placement and there might be further changes; this put her "in a particularly vulnerable situation" and in need of consistent contact with the R.'s and the constancy they had provided.

Allie argues that by the time of the hearing on her section 388 modification petition, the R.'s were not in a position to provide the court unique and useful information about Kylee. (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1513-1514.) Allie's premise is faulty; the paternal grandfather received information about Allie's criminal proceedings during a period when the R.'s were having few or no visits with Kylee. This information had a direct bearing on Kylee's dependency case and was not acted upon by the Agency until months later.

The court did not abuse its discretion by declining to terminate the R.s' de facto parent status and denying Allie's section 388 modification petition.

7

DISPOSITION

The order is affirmed.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

McINTYRE, J.