Filed 7/22/22 In re H.B. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| In re H. B., a Person Coming Under the Juvenile Court Law. | C094510 |
| E. B., | (Super. Ct. No. 21DP00807) |
| Plaintiff and Appellant, | |
| v. | |
| AMADOR COUNTY DEPARTMENT OF SOCIAL SERVICES et al., | |
| Defendants and Respondents. | |

E. B. (father) appeals from the juvenile court's order denying his request under Welfare and Institutions Code[1] section 827 to disclose and publish documents in the file of the juvenile dependency case concerning his minor daughter. Father contends he was

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

entitled to the documents at issue, which related to a mental health evaluation he sat for as part of the dependency case, and that the court erred because it failed to adequately weigh the relevant factors when it denied his request. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

As part of the underlying juvenile dependency case, Dr. Anthony Urquiza, a psychologist, evaluated father and drafted a report about his findings. In April 2021, father filed a petition under section 827 seeking access to documents in the juvenile dependency case file. Father explained that a criminal case had been initiated against him based on the same allegations that had been made against him in the dependency case, and that he was currently charged with several counts of lewd and lascivious acts involving his minor daughter. Father provided a lengthy list of document requests, one of which asked for Dr. Urquiza's report. The Amador County Department of Social Services (Department) objected to the request.

Over the course of several hearings, the juvenile court and the parties narrowed the document requests. At the first hearing on the petition, father stated he was primarily interested in documents that were probative of the minor's credibility or her physical condition. As to Dr. Urquiza's report, father believed the report suggested father was "manipulating the results" of the examination because "he did so well, the doctor had trouble believing that he, in fact, was being honest." This suggested that "he took a test and it showed that he is not attracted to children." The prosecutor noted that father had already hired a different expert to evaluate him in the criminal case, although father stated the expert had not used the same test as Dr. Urquiza.[2]

---

[2] The prosecutor described the expert as "an expert under Stowell," presumably a reference to *People v. Stoll* (1989) 49 Cal.3d 1136, which permitted expert testimony concerning the defendant's lack of sexual deviance as evidence of the defendant's good character in a child sex abuse case.

After hearing further argument from the parties, the court stated that father held a patient-therapist privilege in the report, and that he could use his own expert in the criminal case to testify. The court further observed that, to the extent the report opined on father's performance on any test, it would be "tangential" to issues at trial and did not demonstrate a substantial showing of relevance. The court permitted father to review a number of other documents he had requested to flag for the court to review in camera.

At the next hearing, the court authorized father to use several of the other documents he had requested, subject to a protective order. Father also asked for, and received, permission to file briefing on the issue of Dr. Urquiza's report.

In May 2021, father submitted briefing arguing he was entitled to receive the mental health evaluation and to disseminate it for the purposes of his criminal defense. The Department filed briefing asking the court to conduct an in camera review of the documents at issue, which it described as Dr. Urquiza's evaluation/report and an assessment that Dr. Urquiza had used to evaluate father. The Department noted it would release the documents to father for his own review, but that a court order would be needed to publish the documents for use in the criminal case. The court granted the Department's request and agreed to conduct an in camera review. At a hearing shortly thereafter, the court stated it had reviewed the documents. The court confirmed that the documents, which included an assessment, an intake form, and an evaluation, had been given to father, and that the issue it was determining was whether father could use or publish the documents in his criminal case, but continued the hearing until father could serve his briefing on minor's counsel.

The court held a final hearing on the issue on May 13, 2021. Minor's counsel argued father was entitled to review the documents, but that it would not be appropriate to allow father's counsel to attempt to introduce them in the criminal case. The Department argued the documents were not substantially relevant to father's criminal proceeding and distinguished the case law supporting father's petition by asserting that

3

the documents did not involve "impeachment material for a key witness." The juvenile court gave a tentative ruling, saying that Dr. Urquiza's examination was "conducted for the purpose of determining whether there were any services that could be offered to [father] in the context of a juvenile dependency case, which always the goal is reunification with a parent. That purpose is not similar to the purpose in the criminal court, and so my indicat[ion] is to not release any of these because they're -- well, one, they don't have any *Brady*[3] material in them. They don't have any statements from the minor. And the purpose of these evaluations was completely different than the aim of the criminal court." (Italics added.)

Father argued he was entitled to the documents because he had to give HIPAA authorization to the Department for the evaluation, and that he was thus the "sole holder of that privilege" as to the documents. He asserted the minor had little privacy interest in the documents because they did not possess any of her statements. The court explained the applicable procedures and standards under rule 5.552(d) of the California Rules of Court, saying, " 'If the Court grants the petition, the Court must find that the need for access outweighs the policy considerations favoring confidentiality of juvenile case files. . . . The Court may permit access to juvenile files only insofar as it is necessary and only if the petitioner shows by a preponderance of the evidence that the records requested are necessary and have substantial relevance to the legitimate need of the petitioner.' " The court then denied the petition, saying father had not met his burden "to overcome the privacy interests."

---

**3**  *Brady v. Maryland* (1963) 373 U.S. 83.

DISCUSSION

Father argues the juvenile court erred in denying him the use of the documents generated as a result of Dr. Urquiza's examination.[4] In particular, father claims the court incorrectly balanced the interests at stake because the minor had little or no privacy interest in the documents, but father had a strong, constitutionally protected interest in receiving a fair trial, which could only be effectuated with the benefit of the documents. We disagree.

"The strong public policy of confidentiality of juvenile proceedings and records has long been recognized." (*In re Keisha T.* (1995) 38 Cal.App.4th 220, 231.) Section 827 "permits prosecutors to inspect juvenile files without a court order (see § 827, subd. (a)(1)(B)), but neither a prosecutor nor any other person authorized to inspect without a court order is permitted to disseminate confidential information in juvenile files to a person not so authorized. (*Id.*, subd. (a)(4).)." (*People v. Stewart* (2020) 55 Cal.App.5th 755, 773.) The juvenile court is vested "with exclusive authority to determine when a release of juvenile court records to a third party is appropriate." (*In re Keisha T.*, at p. 232.)

When evaluating a petition under section 827, the juvenile court "must balance the interests of the child and other parties to the juvenile court proceedings, the interests of the petitioner, and the interests of the public." (Cal. Rules of Court, rule 5.552(d)(4).) "If the court grants the petition, the court must find that the need for access outweighs the policy considerations favoring confidentiality of juvenile case files." (*Id.*, rule 5.552(d)(5).) "The court may permit access to juvenile case files only insofar as is

---

[4] In his briefing, father stated he was seeking only one document, although the Department stated that the records at issue are actually two documents: a report created by Dr. Urquiza and an assessment tool involved in father's evaluation. At oral argument, father clarified his challenge encompasses both documents.

necessary, and only if petitioner shows by a preponderance of the evidence that the records requested are necessary and have substantial relevance to the legitimate need of the petitioner." (*Id*., rule 5.552(d)(6).)

"[T]he juvenile court is in the best position to weigh competing concerns with respect to disclosure." (*In re Elijah S.* (2005) 125 Cal.App.4th 1532, 1550.) Thus, the "juvenile court has broad and exclusive authority to determine whether, and to what extent, to grant access to confidential juvenile records." (*R.S. v. Superior Court* (2009) 172 Cal.App.4th 1049, 1055.) Accordingly, we review such decisions for abuse of discretion. (*In re R.G.* (2000) 79 Cal.App.4th 1408, 1413.)

Here, the juvenile court balanced the relevant interests to determine whether to grant father's request. When father filed his petition, he explained the possible grounds for relevance, and the court evaluated his request, assessing whether the requested documents were: (1) necessary, because father had separately retained an expert witness in his criminal case to write a report on his lack of sexual deviance; and (2) substantially relevant, noting that the documents seemed "tangential" to the issues at trial. The court then entertained further briefing on the issue and father raised arguments substantially similar to those he raises now, including his argument that the minor's limited privacy interests should give way to his interest in a fair trial.

After reviewing the documents in camera, the court explained its reasoning for denying the petition and described the interests at stake. Father did not meet his burden of showing that the documents were both necessary and substantially relevant such that his need for the documents outweighed the policy considerations favoring confidentiality. First, father did not explain why the test Dr. Urquiza performed made his opinion unique from that of father's other expert, and second, father did not explain why the documents would be substantially relevant, given the different purpose for Dr. Urquiza's evaluation. It was within the juvenile court's authority to weigh the competing interests at stake in the petition and to evaluate whether father had made a sufficient showing to require

disclosure. (*In re Elijah S., supra*, 125 Cal.App.4th at p. 1550; see also *In re B.F.* (2010) 190 Cal.App.4th 811, 820-821 [noting the minors' interest in preventing "release of a parent's psychological evaluation"].) Even if reasonable minds could differ on the ultimate outcome of the balancing of interests, the juvenile court's decision was not arbitrary, capricious, or absurd. That the court did not explicitly address each of father's arguments does not demonstrate an abuse of discretion.

Father argues he should be exempt from section 827 because the documents "belong" to him, and he was thus the "exclusive holder of the privilege" covering the documents. Privilege, however, "is not synonymous with confidentiality," and the fact that father had a privilege in the documents that he waived does not eliminate the separate statutory confidentiality requirement that attaches to a juvenile case file. (*In re B.F., supra*, 190 Cal.App.4th at p. 819; *In re Tiffany G.* (1994) 29 Cal.App.4th 443, 448, fn. 4.) Nor does this argument speak to the balancing test the juvenile court was required to apply.

Likewise, *Lorenza P. v. Superior Court* (1988) 197 Cal.App.3d 607 is not supportive of father's argument because it states only that a parent may "review records" in a juvenile case file under section 827, not that the parent may publish or disseminate those records. (*Lorenza P.*, at p. 611; see also *People v. Stewart, supra*, 55 Cal.App.5th at p. 773 [distinguishing right to inspection from dissemination].) And, to the extent the parent in *Lorenza P.* was seeking her own files, she sought files held by the State Department of Social Services and protected by section 10850, not files held in a juvenile case file protected by section 827. (*Lorenza P.*, at p. 612; see also *In re Keisha T., supra*, 38 Cal.App.4th at pp. 237-238 [discussing different purposes and subject matter of § 10850 and § 827].)

Finally, father asserts the juvenile court's decision implicated his constitutional right to a fair trial because it permitted the prosecution to avoid its obligations to disclose exculpatory evidence under *Brady v. Maryland, supra*, 373 U.S. 83. The juvenile court

7

conducted an in camera review of the documents at issue and concluded there were no *Brady* materials included, however, which was adequate to satisfy any *Brady* requirements. (*People v. Stewart, supra*, 55 Cal.App.5th at pp. 774-775; *J.E. v. Superior Court* (2014) 223 Cal.App.4th 1329, 1338-1339; see *Pa. v. Ritchie* (1987) 480 U.S. 39, 59-60.) We also see no indication the court failed to consider father's asserted need for the documents, as father raised the same argument before the juvenile court and the court discussed the documents' role in father's trial. We conclude the juvenile court did not abuse its discretion when it denied the petition.

## DISPOSITION

The juvenile court's orders are affirmed.


/s/
Robie, Acting P. J.


We concur:


/s/
Duarte, J.


/s/
Renner, J.