[No. B060571. Second Dist., Div. Seven. July 21, 1993.]

SUK YONG KIM et al., Plaintiffs and Appellants, v.
SUMITOMO BANK OF CALIFORNIA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976(b), this opinion is certified for publication with the exception of part VI and the second full sentence of the Disposition.

**COUNSEL**

Carl James Sohn for Plaintiffs and Appellants.

Leland, Parachini, Steinberg, Flinn, Matzger & Melnick, Richard Fannan and David. J. Cowan for Defendant and Appellant.

**OPINION**

**WOODS (Fred), J.**—Plaintiffs appeal from a summary judgment granted in favor of defendant, contending that defendant violated various duties it owed plaintiffs, who had taken out a construction loan from defendant. Defendant appeals from the order denying its motion for attorney fees. We affirm the judgment and reverse the order.

FACTUAL AND PROCEDURAL SYNOPSIS

## I.  *Factual background*

In February 1985, plaintiffs Suk Yong Kim and Ok Sun Kim (Kims) entered into a construction contract with Jonathan Pae to build an apartment building on property they owned in Los Angeles.

On August 6, 1985, the Kims obtained a construction loan from defendant Sumitomo Bank of California (Bank). In connection with the loan, the Kims signed a promissory note, executed a deed of trust in favor of the Bank, and entered into a construction loan agreement (Loan Agreement) with the Bank.

About the same time, the Kims also entered into a joint control agreement (Control Agreement) with Pae and defendant Builders Disbursements, Inc. (BDI), whereby BDI agreed to periodically disburse funds to the contractor upon the contractor's instruction. The funds to be disbursed were to come from the Bank loan.

The Bank was not a party to the Control Agreement. The Control Agreement provided that the Kims would leave the money with the lender to be provided to the disbursing agent upon the agent's instruction.

Under the Loan Agreement, the Bank would advance the loan proceeds in accordance with the disbursement plan attached to the Loan Agreement. The disbursement plan provided for "all funds to be disbursed through [BDI], according to the schedule specified in the [Control] agreement."

After the agreements were entered into and construction had commenced, problems developed with the construction. Disputes arose over whether BDI properly disbursed the funds, the Bank should have required a performance bond, the Bank should have exercised its option to take over the construction, the Bank over-disbursed money to BDI, and the Bank should indemnify the Kims for damages to a neighbor's property during construction.

When the disputes were not resolved, the Kims filed a complaint against several defendants. The Bank was named in causes of action for breach of fiduciary duty, negligence and for indemnity. The Kims sought attorney fees on all causes of action.

## II.  *Procedural background*

The Kims appeal from the judgment entered in favor of Bank following the court's granting the Bank's third summary judgment motion. The court

had summarily adjudicated certain issues on three previous motions (two by the Bank and one by BDI).

On the Bank's first motion, Judge John Zebrowski summarily adjudicated that the Bank did not have a duty to require a performance bond, to advise the Kims of the merits of their action in entering into a business deal, to supervise the project, to step in and correct damages to a neighbor's property, or to take over construction. The court also granted the issue that the Bank did not act with malice toward the Kims. The court denied the issue that the Bank did not have a fiduciary duty "because it is unclear what duty, if any, BDI had and what duty Sumitomo may therefore have had regarding BDI's disbursements."

Judge Zebrowski denied the Bank's second summary judgment motion, as a triable issue of fact existed with regard to an agency relationship between Sumitomo and BDI.

Temporary Judge Robert W. Zakon granted BDI's issue that BDI was not the Bank's agent.

On January 22, 1991, Judge Valerie Baker granted the Bank's third summary judgment motion, as there were no triable issues of material fact remaining.

Judge Baker denied the Bank's motion for attorney fees.

The parties filed timely notices of appeal from the judgment and from the motion denying the request for attorney fees.

DISCUSSION

I.  *Standard of review*

■ "Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court." (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) We must identify the issues framed by the pleadings, determine whether the moving party has negated the opponent's claims, and determine whether the opposition has demonstrated the existence of a triable, material factual issue. (*Id.*, at pp. 1064-1065.)

"On appeal our review is limited to the facts shown in the documents presented to the trial judge in making our independent determination of their

construction and effect as a matter of law." (*Bonus-Built, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 442 [186 Cal.Rptr. 357].) Facts not contained in the separate statement do not exist. (*United Community Church* v. *Garcin* (1991) 231 Cal.App.3d 327, 337 [282 Cal.Rptr. 368].)

The bulk of the legal authority relied on by the Kims is the opinion of their counsel, an opinion often unsupported by citation to any recognized legal authority. At times, the relevance of the cited authority is not discussed or points are argued in conclusionary form. "This court is not required to discuss or consider points which are not argued or which are not supported by citation to authorities or the record." (*MST Farms* v. *C. G. 1464* (1988) 204 Cal.App.3d 304, 306 [251 Cal.Rptr. 72].)

## II. *The Bank had no fiduciary duty to the Kims*

In *Price* v. *Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476 [261 Cal.Rptr. 735], the court observed: "It has long been regarded as 'axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor.' [Citation.] 'A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such.' [Citation.] The same principle should apply with even greater clarity to the relationship between a bank and its loan customers."

In *Price*, the court noted that the plaintiffs did not contend that their agreement with the bank satisfied the five-part test for a special relationship nor did they seek to prove special circumstances that might conceivably give a fiduciary character to a lender/borrower relation. (213 Cal.App.3d at p. 478.) Although not precisely stated, the Kims argue that they had a special relationship with the Bank and that special circumstances created a fiduciary relationship with the Bank.

California courts have determined that the relationship of a bank-commerical borrower does not constitute a special relationship for the purposes of the covenant of good faith and fair dealing. (*Careau & Co.* v. *Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1399, fn. 25 [272 Cal.Rptr. 387].)

First, the Kims argue that a special relationship existed because under the Loan Agreement, the Bank was a control lender in that they were at the mercy of the Bank, which had stripped them of their right to control their project. Counsel does not discuss what a control lender is (other than claiming that the Bank is one). As authority, the Kims rely on a law review article and *Taylor* v. *Standard Gas Co.* (1939) 306 U.S. 307 [83 L.Ed. 669,

59 S.Ct. 543], a case in which they claim the United States Supreme Court stated that a lender that assumes a control position vis-à-vis a borrower may occupy a fiduciary position to the borrower. The lender in *Taylor* was a parent corporation which mismanaged the operations of the debtor/subsidiary corporation.

The law review article relied on by the Kims states that: "As a lender, the bank may become a control creditor by becoming so involved in the borrower's daily operations that the bank has, in effect, dominated the borrower to the extent that the borrower has lost its separate identity." (Note, *The Fiduciary Controversy: Injection of Fiduciary Principles into The Bank-Depositor and Bank-Borrower Relationships* (1987) 20 Loy. L.A. L.Rev. 795, 800.) The article also refers to a merger of identities where the bank can command the debtor to obey the bank's policy directives or the bank's being the alter ego of the debtor before fiduciary duties are imposed. (*Id.,* at pp. 800-801.)

No such relationship exists here. There is no indication that the Bank had any say in the operation of the construction project. If anything, the Kims are complaining that the Bank did not become involved in the daily operation of the construction project. The Kims do not discuss how paragraphs 5, 7, and 8 of the Loan Agreement made the Bank a control lender. Those sections do not give the Bank any authority over the Kims' project. Moreover, although the Bank held the loan proceeds, the disbursement of the proceeds was ultimately authorized by the contractor, not the Bank.

Second, the Kims claim that the Bank had a fiduciary duty to them because it took from them their right to use and control the funds they borrowed from the Bank, the Bank used and disbursed the Kims' money as it saw fit, and they had no choice but to rely on and trust the Bank. The Kims' position is supported by the dicta in *Price* that a fiduciary relationship might arise in a bank/borrower relation and a statement in *Barrett* v. *Bank of America* (1986) 183 Cal.App.3d 1362, 1369 [229 Cal.Rptr. 16], that the relationship of a bank to depositor is at least quasi-fiduciary, giving rise to a duty to disclose facts which might place the bank or a third party at an advantage with respect to the customer. In *Barrett*, involving an issue of constructive fraud, the bank's loan officer advised the loan customers that they would be released from personal guarantees if they consummated a merger of their business, but withheld information that the bank stood to benefit from the merger. Furthermore, the loan customers had shared unfavorable confidential information with the officer and relied on the officer's advice. There was no such advice or sharing of confidential information here. The loan was a straightforward commercial transaction.

The Kims also cite four out-of-state cases for the proposition that in special circumstances, a fiduciary relationship may be created between a bank and a borrower. (E.g. *Klein* v. *First Edina National Bank* (1972) 243 Minn. 418 [196 N.W.2d 619, 622-623, 70 A.L.R.3d 1337]; *First National Bank in Lenox* v. *Brown* (Iowa 1970) 181 N.W.2d 178, 182-183; *Stewart* v. *Phoenix Nat. Bank* (1937) 49 Ariz. 34 [64 P.2d 101, 106]; *Deist* v. *Wachholz* (1984) 208 Mont. 207 [678 P.2d 188, 193-195].) Counsel does not discuss what the special circumstances were in those cases or how they are similar to the facts here. The cases involved situations in which a bank allegedly withheld information from the borrower about relevant transactions or the borrower relied on advice of the bank.

In the instant case, the crux of the Kims' complaint is that they relied on the Bank because they did not have control over their money. The Kims also claim that the Bank failed to disclose all material facts in that they were not told about the disbursement agent. However, the loan documents, including the agreement with the disbursement agent, signed by the Kims clearly stated how the money was to be disbursed. There was no need for the Bank to explain what was stated in black and white.

Therefore, the Kims do not and cannot claim either that they relied on any advice of the Bank or that the Bank withheld information from them. The Kims do not argue that they were fraudulently induced into signing the agreements. Rather, it is apparent that the Kims' objections to the disbursement procedure are before this court because they did not pay attention to what they signed. It is more accurate to say that the Kims gave up the right to use and control the money they borrowed than to say the Bank took that right from them.

The Kims speculate that even if the Bank had explained the agreements, they would have been coerced into signing them because if they rejected the agreements, their loan would have been denied.[1] The Kims point to no evidence indicating that the Bank would have rejected a provision giving them the authority to approve the release of funds. The Kims chose to sign the agreements. Contrary to the Kims' position, their relationship with the Bank was that of a normal lender-borrower. Accordingly, we conclude that as matter of law, the Bank had no fiduciary duty to the Kims.

III.   *The Bank did not have a duty to require a performance bond*

Since the Kims' suggestion that the Bank had a duty to require a performance bond is unsupported by any legal authority mandating such a duty, we

---

[1] Interestingly, in their reply brief, the Kims state that if the Bank had informed them it required a disbursing agent, they most likely would have accepted BDI as the agent for the project.

need not address this contention. The matter of who requested the waiver, i.e., whether it was the Kims and the contractor or the contractor alone, is simply irrelevant. As far as their argument that the Bank did not execute a written waiver of its own requirement for a performance bond, the loan agreement signed by the Kims states that the provision for the bond in "N/A." If the Kims were unaware that the performance bond had been waived, it was because of their failure to read what they signed.

IV. *Since the Bank had no duty to inspect, it did not negligently disburse the loan funds*

The Kims contend that as the Bank agreed in the Loan Agreement to disburse money in accordance with the Control Agreement, the Loan Agreement created a duty on the part of the Bank to inspect the property to ensure that it was in fact disbursing the loan proceeds according to the Control Agreement. The agreements provide otherwise.

Section 14 of the Loan Agreement provides that: "Borrower acknowledges and agrees that the relationship between Borrower and Bank shall at all times remain solely that of borrower and lender. Bank has no liability or obligation whatsoever in connection with the Project or the construction or completion thereof or work performed on the Property. Bank is not obligated to inspect the Project nor shall it be liable for the performance or default of any architect, appraiser, contractor, subcontractor, materialman, laborer, or for any failure to construct, complete, protect, or insure the Project, or for the payment of any costs or expense incurred in connection therewith, or for the performance or non-performance of any obligation of Borrower to Bank; and nothing, including without limitation, any disbursement hereunder or the deposit or acceptance of any document or instrument, shall be construed as a representation or warranty, express or implied, on its part."

The Kims further agreed that the Bank would advance the loan proceeds in accordance with the disbursement plan attached to the Loan Agreement. The plan provided for "all funds to be disbursed through [BDI], according to the schedule specified in the [Control] Agreement." The Control Agreement provided that "[n]othing herein shall be construed to affect or prejudice any of the rights or privileges or agreements of the Lender in connection with its aforesaid loan" and that the funds were not to be disbursed "EXCEPT UPON WRITTEN REQUEST OF BDI."

The Kims suggest that the basic issue on appeal is whether after parties have entered a contract, the intent of the parties and the purpose of the contract are more important than the words of the contract. The Kims want

this court to find an implied obligation on the Bank's part to inspect even though the Loan Agreement specifically states the Bank had no duty to inspect. Under their reasoning, a party to an agreement could abrogate the agreement simply by not reading what it signed and then complaining that it was not aware of the terms of the agreement. As against the Bank, the Kims are the appropriate party to bear the costs of their failure to read what they signed.

According to the agreements, the Bank was to disburse the funds upon request from BDI. The Kims do not point to any evidence that the Bank disbursed any funds without a request from BDI. Their statement that BDI deliberately falsified draw requests to the Bank is a concession on their part that the bank did not disburse funds without a request.

## V. *BDI is not the Bank's agent*

The Kims contend that BDI is the Bank's agent because the Bank inserted BDI into the Loan Agreement and required the Kims to enter the Control Agreement. The Kims argue that there is evidence of an implied agency in the retention of BDI, the Bank's extensive prior relationship with BDI, and the Bank's exclusive use of and trust in BDI.[2]

The fact that parties had a preexisting relationship is not sufficient to make one party the agent for the other. In order to create an agency, the principal must confirm authority upon the agent. (See Civ. Code,[3] § 2315.) An agency is proved by evidence that the person for whom the work was performed had the right to control the activities of the alleged agent. (*Malloy* v. *Fong* (1951) 37 Cal.2d 356, 370 [232 P.2d 241].) When the principal only controls the results of the work and not the means by which it is accomplished, an independent contractor relationship is established. (*White* v. *Uniroyal, Inc.* (1984) 155 Cal.App.3d 1, 25 [202 Cal.Rptr. 141].)

The evidence cited by the Kims does not suggest, much less prove, that the Bank controlled BDI's activities or how it did business. Under the agreements, rather, it was the Bank which acted, i.e., by disbursing the funds, at the direction of BDI. The Kims claim that the Bank made them sign the Control Agreement and pay BDI.

The Kims once again seek shelter in the fact that they executed all the documents presented to them to get the loan and that they did not know

[2]The Kims cited the deposition of Elizabeth Poulos, a bank officer, in support of their claim that the Bank had an exclusive relationship with BDI. In the same portion of the deposition in the record, Poulos also stated that the Bank did not specifically require that only BDI be used as the disbursing agent and that she was aware of a recent case in which another agent was used.

[3]Unless otherwise noted, all statutory references are to the Civil Code.

about the Control Agreement until nine months[4] after they executed the Loan Agreement. There is no argument that the manner of the Kims signing of the agreements was anything but voluntarily. Thus, the Bank did not "make" the Kims sign the Control Agreement. Any lack of knowledge on their part was their fault.

Since the Kims have not shown the existence of a triable, material issue of fact, summary judgment was properly granted, and we affirm the judgment entered in favor of the Bank.

VI.   *The Bank is entitled to reasonable attorney fees**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## DISPOSITION

The judgment is affirmed. . . .* The Bank is awarded costs on appeal.

Lillie, P. J., concurred. Johnson, J., concurred in the judgment only.

---

[4]The Kims' claim that they did know about the Control Agreement until nine months later is not supported by any citation to the record.

*See footnote, *ante*, page 974.