Filed 3/26/14  Wells v. Starelli CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JAMES RONALD WELLS, | C070421 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2008-00027963-CU-FR-GDS) |
| v. | |
| DANIEL K. STARELLI et al., | |
| Defendants and Respondents. | |

Following a jury trial, plaintiff James Ronald Wells appeals from a judgment entered in favor of defendants Daniel K. Starelli, Kevin R. Gibbs, and Ennis T. Henderson, in plaintiff's fraud complaint arising from an unsuccessful business venture between plaintiff, Gibbs, and Henderson, in which plaintiff agreed to invest in their operation of a branch office of Sierra Star Home Loans.  Plaintiff alleged defendants fraudulently concealed that Gibbs and Henderson were not licensed real estate agents, as is required of persons handling real estate loans.  Plaintiff sought vicarious liability and liability for failure to supervise as against Starelli, who was not a party to the agreement,

1

but who owned Five Star Ventures, Inc., dba (doing business as) Sierra Star Home Loans and who employed Gibbs and Henderson. The jury returned special verdicts finding that neither Gibbs nor Henderson intentionally failed to disclose an important fact that plaintiff did not know and could not reasonably have discovered, and neither Gibbs nor Henderson committed fraud (concealment of a material fact). The trial court entered judgment in favor of all defendants.

On appeal, plaintiff argues the evidence does not support the judgment because (1) a real estate agent's license is required in order to work under a broker, yet neither Gibbs nor Henderson had a license; (2) Gibbs and Henderson had ostensible authority to manage the broker's office for Starelli; and (3) there is no evidence that Gibbs or Henderson accounted for the funds used.[1] In his respondent's brief, Starelli argues plaintiff forfeits his substantial evidence argument by failing to cite evidence favorable to the judgment, and plaintiff fails to show grounds for reversal. Neither Gibbs nor Henderson, who represented themselves in the trial court, has filed a respondent's brief on appeal.[2] We affirm the judgment in favor of all defendants.

---

[1] These three points are made in the body of plaintiff's appellate brief, but the table of contents lists only the first point. Plaintiff has not complied with the rule requiring that each argument be raised under a separate heading or subheading. (Cal. Rules of Court, rule 8.204(a)(1)(B); *In re S.C.* (2006) 138 Cal.App.4th 396, 408 (*S.C.*).) As this court has previously observed, "[t]his is not a mere technical requirement; it is "designed to lighten the labors of the appellate tribunals by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass.' [Citations.]" (*S.C.*, *supra*, at p. 408.) We nevertheless exercise our discretion to address plaintiff's arguments.

[2] If a respondent fails to file a brief, the appellate court may decide the appeal on the record, the opening brief, and any oral argument by the appellant. (Cal. Rules of Court, rule 8.220(a)(2).) Nevertheless, the judgment is presumed correct on appeal, and it is plaintiff's burden as appellant to show grounds for reversal. (Cal. Const., art. VI, § 13;

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed suit alleging three counts plus a claim for punitive damages. The first count alleged fraud - intentional misrepresentation against Gibbs and Henderson. The second count alleged fraud - concealment against Gibbs and Henderson. The third count alleged Starelli was liable for failure to supervise his employees and failure to run a background check on Gibbs.

## Trial Evidence

Starelli is a licensed real estate broker and president of Five Star Ventures, Inc., dba Sierra Star Home Loans,[3] which had five branches, including one on Business Park Drive. The Business Park Drive office was a "net branch." Starelli testified, "A net branch is a compensation situation where the gross proceeds come into the company and all the expenses are paid by the independent contractor [here, Gibbs and Henderson], and what is left over is the profits. [¶] So all the expenses are typically paid by the people that I had in the branch." He further testified that the independent contractors receive the majority of the income, and the owner gets a small percentage. After expenses are paid, whatever is left -- the "net" proceeds -- is profit to the net branch. Starelli said net branches are common in the industry.

Starelli testified Gibbs and Henderson were independent contractors who operated the Business Park Drive branch and were responsible for operating expenses. Gibbs and Henderson could run the branch as they saw fit, including bringing in investors. Gibbs and Henderson also worked at the Business Park Drive branch under employment contracts dated December 2005 saying they were salespersons, but Starelli testified Gibbs and Henderson worked as unlicensed assistants, who were in training to get their real

---

Code Civ. Proc., § 475; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

[3] The company was initially a named defendant but was dismissed from the action.

estate licenses. Starelli handled any activities requiring a license. It was an "allowable situation" to have Gibbs and Henderson assist Starelli as unlicensed assistants in training to get licenses while Starelli handled all activities requiring a license.

Plaintiff, Gibbs, and Henderson knew each other because they all took a training class at Cornerstone Mortgage. The students were generally people interested in obtaining a real estate license.[4] After completing the training program, in December 2005, Gibbs and Henderson went to work operating the net branch at Business Park Drive, and plaintiff loaned them $5,000. The loan agreement stated the loan was between plaintiff as lender and Gibbs and Henderson as borrowers, and the borrowers "will also extend an opportunity for the Lender to make an investment in the business operations of the 'Rancho Cordova Branch Operations' for Sierra Star Home Loans (Presently Managed and Operated by Ennis T. Henderson and Kevin R. Gibbs). [¶] Note: This investment will not gain the Lender any Ownership Interest in Sierra Star Home Loans, but will gain him an 'Agreed upon Interest' in the Profits earned by this Branch Office, as well as a voice in the decision making process for the Branch."

In December 2005, plaintiff, Gibbs, and Henderson, entered into a limited partnership agreement. A document entitled Limited Partnership Agreement was admitted as plaintiff's exhibit 5, but it is unsigned.[5] The limited partnership agreement stated it was an agreement between plaintiff, as limited partner, and Gibbs and

---

[4] According to plaintiff, he was not interested in getting a license but wanted to educate himself for real estate investments.

[5] The parties agree there was a signed agreement but disagree as to whether exhibit 5 is it. Plaintiff alternately relied upon or disavowed exhibit 5 as suited his purposes. Gibbs said an agreement was signed, but he was not sure if it was exactly the same as the unsigned trial exhibit and did not agree to be bound by the unsigned document. Gibbs said the signed document had been kept by plaintiff in plaintiff's office. After the split, documents that had been in the office were no longer there.

Henderson, "(Co-Branch Managers and Owner Operators) of the Rancho Cordova Branch of Sierra Star Home Loans, a 'Net Branch of a California Corporation,' with its principal place of business residing at 9960 Business Park Drive, Suite 110, Sacramento, California 95827 (General Partners of that Branch), a Net Branch Operation." The contract said, "The purpose of this Partnership is to have [plaintiff] invest in, and become a Limited Partner in the second[6] Net Branch Office to be opened within the next 18-24 months, by Ennis T. Henderson and Kevin R. Gibbs (With Sierra Star Home Loans[)], and to do the things essential, advisable, or appropriate in connection with, or incidental to, such business." Gibbs testified they did not need a real estate license to enter this partnership agreement in which plaintiff agreed to invest money in the business in order to participate in the profits. Gibbs said a real estate salesperson must be licensed to handle real estate transactions, but he was not operating in that capacity in making the partnership agreement.

Starelli, Gibbs, and Henderson all testified that Starelli was not part of any agreement with plaintiff. Plaintiff admitted he never discussed with Starelli the partnership agreement or his investment.

Plaintiff testified that between 2005 and 2007, he invested about $128,000. Plaintiff opened an American Express account on which Gibbs and Henderson were allowed to make charges; the bill was sent to the Business Park Drive office. Gibbs and Henderson used the money mainly for office expenses, furniture, and equipment. Plaintiff said he expected Gibbs and Henderson to drum up business by advertising, cold calls, door-to-door distribution of promotional materials, etc., and they did expend some such efforts but in plaintiff's view not enough. Plaintiff said he was at the office three or

---

6 The parties do not make clear what or where the "second" branch was. No second branch ever opened, and plaintiff's money was used for the Business Park Drive branch.

four days a week. Initially, plaintiff said he was there to supervise Gibbs and Henderson. He then said he was there to observe them.

Around September 2006, Starelli severed ties with Gibbs and Henderson because of their failure to acquire licenses. But Starelli still had the remainder of a two-year lease on the Business Park Drive office, so he subleased it to Gibbs and Henderson.

Gibbs testified he did not obtain his license because mortgage companies were on the decline because of market conditions. Henderson and Gibbs tried to shift gears and operate under a licensed financial lender for which they would need no license, and they attempted another venture which is not the subject of this lawsuit. Henderson left in mid-2007, and Gibbs and plaintiff later parted ways.

Gibbs testified he did not do an accounting. Although plaintiff testified he asked for an accounting and was told it was none of his business, Gibbs testified plaintiff "never asked me for an accounting because [plaintiff] was right there every day. He saw with his own eyes where the money was being spent."

Plaintiff testified that, when he entered the partnership agreement, he thought Gibbs and Henderson had real estate licenses "because they were working in a broker's office" as branch managers. He claimed he learned Gibbs and Henderson were unlicensed after he made the investment, when Starelli visited the office in mid- to late-2006 and said they needed to get a license.

Plaintiff claimed he would not have invested his money had he known they were unlicensed.[7]

---

[7] Plaintiff's appellate briefing suggests an additional fact was concealed in that he was not told that Gibbs had a felony conviction for spousal abuse. However, plaintiff fails to cite any evidence that he would not have invested had he known about the criminal conviction. And our review of the record does not reveal that he ever testified to this effect. In any event, we may disregard points unsupported by citation to the record. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.)

6

However, plaintiff himself provided conflicting evidence about whether he previously knew Gibbs and Henderson were unlicensed. When cross-examined as to why plaintiff himself did not get a license within 90 days of December 12, 2005, which he conceded was an express requirement of the partnership agreement, plaintiff testified he never really intended to get a license but was merely "thinking of taking the exam. I was not sure if I was going to. I was waiting for you [Henderson] and Mr. Gibbs to take the exam, also."

Additionally, plaintiff testified, in response to a question from the jury, as follows: "THE COURT: [¶] . . . [¶] This question goes to your assumption that Gibbs and Henderson had licenses since -- even though such were not posted next to Mr. Starelli's . . . and so this juror asks: To what extent you attempted to ascertain whether Mr. Gibbs or Mr. Henderson did, in fact, have a license when you saw the Starelli license but no other licenses?" Plaintiff admitted it "was [his] assumption" that Gibbs and Henderson had licenses, because he had learned through a real estate class he took at Cornerstone Realty that if a person is working for a real estate broker doing real estate transactions, he or she would need a license. Another juror question was "Did you attempt, through any public records, to ascertain the licensing status of Mr. Gibbs or Mr. Henderson?" Plaintiff answered, "No."

The jury returned special verdicts answering "No" to each of the following questions:

"Did Defendant Gibbs intentionally fail to disclose an important fact that Plaintiff Wells did not know and could not reasonably have discovered?"

"Did Defendant Henderson intentionally fail to disclose an important fact that Plaintiff Wells did not know and could not reasonably have discovered?"

"Did Defendant Gibbs and/or Defendant Henderson commit fraud (i.e., concealment of a material fact) against Plaintiff Wells?"

On January 13, 2012, the trial court entered judgment in favor of defendants pursuant to the jury's verdict. Plaintiff appeals from the judgment.[8]

## DISCUSSION

### I. Licensing

Plaintiff argues a real estate agent's license is required in order for a person to work under a real estate broker, and "There is no disputing that neither Gibbs nor Henderson was licensed. There is no disputing that Plaintiff Wells was not informed of that fact." Under a separate heading about ostensible authority, plaintiff argues Starelli is liable because Gibbs and Henderson had ostensible authority to manage the Five Star branch, which would have included acquiring funds, and Starelli, as the licensed broker, was responsible for supervising the branch and protecting those who did business there. Plaintiff then argues, "It is undisputed that Starelli, for the benefit of his company Five Star Ventures, opened the branch office and installed both Gibbs and Henderson to manage it. Conspicuous at the Branch was the Five Star signage, and Starelli's posted license."

Insofar as plaintiff wants to talk about licensing or ostensible authority, he forfeits those matters by failing to provide any analysis or authority that Gibbs or Henderson needed a real estate license to enter the contract that is the subject of this appeal. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 ["When an

[8] In a footnote in his appellate brief, plaintiff claims that, after the jury rendered its verdict, he told the trial court outside the jury's presence that he "will be moving for a new trial, and the court responded that motion is denied." Plaintiff acknowledges that no such exchange appears in the record. His footnote claims an intent to move for correction of the record, but we denied his motions for such correction. Thus, there is nothing for us to review regarding a motion for new trial. Moreover, we may disregard points raised in a footnote rather than being properly presented under a discrete heading with appropriate analysis. (*Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 160.)

issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary"].)

Plaintiff simply refers us to sections 10130 and 10132 of the Business and Professions Code. Business and Professions Code section 10130 states, in pertinent part, "It is unlawful for any person to engage in the business of, act in the capacity of, advertise as, or assume to act as a real estate broker or a real estate salesman within this state without first obtaining a real estate license from the [Department of Real Estate] . . . ." Business and Professions Code section 10132 defines a "real estate salesman" as "a natural person who, for a compensation or in expectation of a compensation, is employed by a licensed real estate broker to do one or more of the acts set forth in Sections 10131 [authorized activities of brokers], 10131.1 [real property sales contracts or promissory notes secured by realty], 10131.2 [collecting advance fees for sale or lease of realty or business opportunity][9], 10131.3 [securities transactions], 10131.4 [transactions involving mineral, oil, or gas property], and 10131.6 [sale of mobile homes]."

However, these statutes do not require a license for every act performed in connection with a real estate office. (*MKB Management, Inc. v. Melikian* (2010) 184 Cal.App.4th 796, 802 [license was not required for management duties such as causing repairs to be made, decorating, and general maintenance].) Plaintiff cites no evidence or authority that Gibbs or Henderson performed any activities for which a license was required or that the statutes he cites afford him the remedy he seeks in this

---

[9] "Business opportunity" includes "the sale or lease of the business and goodwill of an existing business enterprise or opportunity" (Bus. & Prof. Code, § 10030) and "the transfer of those assets so essential that a business cannot continue without them" (*Salazar v. Interland, Inc.* (2007) 152 Cal.App.4th 1031, 1038).

9

case.  Moreover, plaintiff cites no authority that a license was required for Gibbs and Henderson to enter the partnership agreement for plaintiff's investment.

Plaintiff fails to show grounds for reversal based on licensing or ostensible authority.

## II.  Substantial Evidence

In essence, plaintiff's argument is that no evidence supports the jury's verdict, though plaintiff does not clearly present it as such.  He argues he was denied due process by a biased jury that rendered a decision inconsistent with purportedly undisputed facts. Plaintiff cites no evidence indicating the jury was biased.  Apparently, his theory is that the jurors must have been biased because the verdicts are inconsistent with his view of the state of the evidence.

" '[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes *whether the evidence compels a finding in favor of the appellant as a matter of law*.  [Citations.]  Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." '  [Citation.]"  (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc*. (2011) 196 Cal.App.4th 456, 466, italics added.)[10]  Plaintiff has failed to meet this standard.

---

[10] Insofar as plaintiff claims the evidence does not support the verdict, we could resolve this matter on the ground that plaintiff has forfeited the claim by failing to present it under a discrete heading with proper argument  (Cal. Rules of Court, rule 8.204(a)(1)(B)); *S.C.*, *supra*, 138 Cal.App.4th at p. 408), and by failing to set forth evidence favorable to the judgment (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [substantial evidence review is waived if appellant fails to cite evidence favorable to the judgment]).  We nevertheless address the issue of whether the evidence compels a finding in favor of plaintiff as a matter of law.

10

The elements of fraud by deceit are (1) misrepresentation by false statement, concealment, or nondisclosure (2) with defendant's knowledge of the misrepresentation, (3) defendant's intent to deceive, (4) plaintiff's justifiable reliance on the defendant, and (5) damages. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

Plaintiff's appellate brief, under the heading "STATEMENT OF FACTS," merely cites evidence he considers favorable to himself, e.g., that Gibbs and Henderson should have had licenses in their work with Starelli, that they had no licenses, and that they spent plaintiff's money without providing an accounting. Plaintiff fails to acknowledge the following evidence supporting the verdict: (1) the deal with Gibbs and Henderson was a separate business venture for which licensing was a nonissue; (2) neither Gibbs nor Henderson told plaintiff they had a license; (3) Gibbs and Henderson did not know plaintiff thought they were licensed and did not intend to deceive him; (4) plaintiff knew Gibbs and Henderson were unlicensed; and (5) even if plaintiff did not know, he failed to show the reasonable reliance necessary for fraud because he admitted at trial that he simply assumed Gibbs and Henderson were licensed and did not bother to check. We also note that the jury could have inferred that plaintiff was on notice that neither Gibbs nor Henderson were licensed from the fact that only Starelli's license was displayed in the office. Indeed, it appears from one of the jury questions that this inference was drawn by the jury.

The evidence does not compel a finding in favor of plaintiff as a matter of law. Accordingly, we conclude plaintiff has failed to establish grounds for reversal based on the evidence.

### III. Accounting

Plaintiff argues there is no evidence that Gibbs or Henderson accounted for the funds used. However, plaintiff fails to show why this compels reversal of the judgment, because plaintiff's complaint did not make a claim for an accounting.

An action for an accounting is equitable in nature "to which no right to jury trial attaches." (*DeGuere v. Universal City Studios*, *Inc.* (1997) 56 Cal.App.4th 482, 507; 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 819, p. 236.) In order to make a claim for an accounting, the plaintiff must allege that an accounting is needed to ascertain the balance owed. (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179.)

Here, plaintiff did not ask the court to order an accounting, and therefore the absence of an accounting does not compel reversal of the judgment. Moreover, it does not appear plaintiff was claiming that an accounting was needed to determine the amount owed to him; he sought to recover all the money he invested.

We conclude plaintiff fails to show grounds for reversal of the judgment as to any of the defendants. We therefore affirm the judgment in favor of all defendants.

## DISPOSITION

The judgment in favor of all defendants is affirmed. Defendants are entitled to recover costs on appeal under California Rules of Court, rule 8.278.


                                                        MURRAY            , J.


We concur:


            HULL            , Acting P. J.


            DUARTE        , J.


12