Filed 9/21/22  In re A.L. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.L. et al, a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E077886 |
| Plaintiff and Respondent, | (Super. Ct. No. RIJ1800047) |
| v. | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** [NO CHANGE IN JUDGMENT] |
| A.L. et al., | |
| Defendants and Appellants. | |

The petition for rehearing is denied.  The opinion filed in this matter on August 24, 2022, is modified as follows:

The last sentence on page 8 of the opinion is modified to read as follows:

"Among other things, the legislation amended section 361.5(b)(13)

by adding the following language:  'For purposes of this paragraph,

'resisted' means the parent or guardian refused to participate meaningfully

1

in a prior court-ordered drug or alcohol treatment program and does not include 'passive resistance,' as described in *In re B.E.* (2020) 46 Cal.App.5th 932."

Except for this modification, the opinion remains unchanged.  This modification does not effect a change in the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>CODRINGTON</u>
Acting P. J.

We concur:

<u>SLOUGH</u>
J.

<u>FIELDS</u>
J.

Filed 8/24/22  In re A.L. CA4/2 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

In re A.L. et al., Persons Coming Under the Juvenile Court Law.

|  |  |
|---|---|
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.L. et al.,<br><br>    Defendants and Appellants. | E077886<br><br>(Super. Ct. No. RIJ1800047)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Michele A. Mathis, Judge.  Affirmed.

Sean A. Burleigh, under appointment by the Court of Appeal, for Defendant and Appellant, A.L.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant, F.V.

1

Teresa K.B. Beecham County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

I.

INTRODUCTION

F.V. (Mother) and A.L. (Father) appeal the juvenile court's order denying their petitions under Welfare and Institutions Code section 388.[1] They also contend the juvenile court prejudicially erred by excluding their children's foster mother from testifying at the section 366.26 hearing. We affirm.

II.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2018, five-month-old Ar. was removed from Mother and Father's care because of their methamphetamine use and neglect of Ar.'s medical needs. Ar. was returned to their care in August 2018 because they successfully completed reunification services. Ar.'s dependency case was dismissed in February 2019.

About thirteen months later, on March 15, 2020, the Riverside County Department of Public Social Services (the Department) received an immediate response referral. The referral alleged that Mother had given birth to An. the day before and that Mother tested positive for methamphetamine, amphetamine, and marijuana at the birth. An. tested positive for amphetamines and needed a 10-day penicillin treatment because she had been exposed to syphilis during the delivery.

_____

[1] All further statutory references are to the Welfare and Institutions Code.

2

A social worker later spoke with Mother and Father. Father stated that he kicked Mother out of the house because she had been using methamphetamine again. Father claimed he had been sober for an extended time, but he refused to drug test. Mother admitted to using methamphetamine the day before An.'s birth. She said she relapsed about a month before An.'s birth after being sober for about a year and had been using methamphetamine every few days.

The Department filed a petition on behalf of Ar. and An. under section 300, subdivision (b)(1) due to Mother and Father's "unresolved history of abusing controlled substances." At a detention hearing on March 19, 2020, the juvenile court found the Department made a prima facie showing that the children came under section 300, subdivision (b)(1), and ordered them detained. A contested jurisdiction hearing was eventually set for July 23, 2020.

Father admitted to using methamphetamine on April 2, 2020. He submitted to a drug test the following day, which was positive for methamphetamine and amphetamine. Father did not show up to a drug test about two weeks later.

Mother failed to show up for drug tests on April 3 and 13, 2020. On April 8, however, Mother tested positive for marijuana, amphetamine, and methamphetamine.

In the following months, Mother admitted that she had continued using drugs. She admitted that she used marijuana on July 9, 2020, and used methamphetamine on July 12, 2020. Father failed to show up for a drug test on July 2, 2020, but admitted that he had

3

used methamphetamine on July 13.  Father reported that he cannot think clearly or sleep when he is sober and felt like he needed methamphetamine to function.

On July 31, 2020, the parents had a scheduled in-person visit with the children. Father did not show up, and Mother showed up with glossy eyes and black veins under her eyes.  She admitted that she had been using marijuana daily and had used methamphetamine the day before.

At the contested disposition hearing on August 12, 2020, the juvenile court removed Ar. and An. from their parents' custody and denied services for the parents under section 361.5, subdivision (b)(13) (section 361.5(b)(13)).[2]  The court denied reunification services, finding that they were not in the children's best interests, and set the matter for a section 366.26 hearing.

---

[2]  During the dependency proceedings, former section 361.5(b)(13) provided that the juvenile court need not order reunification services if the court finds by clear and convincing evidence that "[t]hat the parent or guardian of the child has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention, or has failed or refused to comply with a program of drug or alcohol treatment described in the case plan required by [s]ection 358.1 on at least two prior occasions, even though the programs identified were available and accessible."  The provision was recently amended to explain that "For purposes of this paragraph, 'resisted' means the parent or guardian refused to participate meaningfully in a prior court-ordered drug or alcohol treatment program and does not include 'passive resistance,' as described in *In re B.E.* (2020) 46 Cal.App.5th 932."

In March 2021, the Department filed a section 300 petition on behalf of the parents' new son, A., born in February 2021. Mother admitted that she had used methamphetamine two or three weeks before A.'s birth and had received no prenatal care other than an ultrasound. The Department removed A. from the parents' care and placed him in the same foster home as his siblings, An. and Ar. After a detention hearing, the juvenile court found that the Department had made a prima facie showing that A. came within section 300, subdivisions (b), (g), and (j), and ordered him detained.

In May 2021, the juvenile court found true the allegations in the petition concerning A. and set the matter for a dispositional hearing. About a month later, the juvenile court removed A. from the parents' care and denied them services under section 361.5(b)(13), finding that services were not in A.'s best interests. The juvenile court then sent the matter for a section 366.26 hearing.

Mother and Father subsequently filed a series of section 388 petitions seeking family maintenance services and/or reunification services. After denying their initial section 388 petitions, on October 4, 2021, the juvenile court held a combined section 366.26 hearing and hearing on the parents' final section 388 petitions that are the subject of this appeal.

At the hearing, the juvenile court denied the parents' section 388 petitions. The court then found that no exception to adoption applied, terminated the parents' parental rights to their children, and freed them for adoption by their foster parents.

5

III.

DISCUSSION

A. *Section 388 Petitions*

Mother and Father contend the juvenile court erroneously denied their section 388 petitions.[3] We disagree.

"Section 388 permits the parent of a dependent child to petition the juvenile court for a hearing to modify an earlier order on the basis of changed circumstances or new evidence. [Citation.] The petitioning party bears the burden of showing that there is new evidence or changed circumstances and that the proposed modification would be in the best interests of the child. [Citation.]" (*In re N.F.* (2021) 68 Cal.App.5th 112, 120.)

"Whether the juvenile court should modify a previously made order rests within its discretion, and its determination may not be disturbed unless there has been a clear abuse of discretion." (*In re J.C.* (2014) 226 Cal.App.4th 503, 525.) "It is rare that the denial of a section 388 motion merits reversal as an abuse of discretion." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 522.) The juvenile court's order denying a section 388 petition will be reversed only if the court "'"has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].'"" [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

---

[3] Mother and Father join all of each other's arguments on appeal.

Father argues that the juvenile court's findings on changed circumstances is "unclear." Mother contends the juvenile court found that the parents had proved their circumstances had changed but denied the section 388 petitions only because reunification services were not in the children's best interests. Mother notes that although the juvenile court's minute order from the October 4, 2021 hearing states the court found there were no changed circumstances, the court's written orders after the hearing states only that the section 388 petitions were denied because doing so was "not in best interest of the child." Mother also notes that the juvenile court did not clearly state its finding on changed circumstances at the hearing, but instead said only that the court "somewhat teeter[ed] on the issue."

Both parents argue their circumstances had changed. Father, with Mother joining, also extensively argues that a recent amendment to section 361.5(b)(13) applies retroactively under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), and constitutes changed circumstances.[4] They argue that the juvenile court would not have bypassed services under amended section 361.5(b)(13) and thus the presumption against reunification would not have applied. (See *In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 448.) Thus, in their view, the analysis of whether their circumstances had changed and whether reunification was in the children's best interests would have been different (to

---

[4] We do not address Father's arguments on the issue raised for the first time in reply. (See *In re Karla C.* (2010) 186 Cal.App.4th 1236, 1269.)

7

their benefit) if amended section 361.15(b)(13) applied during the dependency proceedings.

We disagree that the recent amendment to section 361.5(b)(13) applies here under *Estrada*. *Estrada* provides that criminal defendants with nonfinal judgments are entitled to the "ameliorating benefits" when a change in the law reduces the punishment for a crime unless the Legislature intended for the change to apply prospectively only. (*Estrada*, *supra*, 63 Cal.2d at p. 744.) Put another way, "[w]hen new legislation reduces the punishment for an offense, we presume that the legislation applies to all cases not yet final as of the legislation's effective date" and will apply it retroactively unless the Legislature intended otherwise. (*People v. Esquivel* (2021) 11 Cal.5th 671, 673.) This is because "newly enacted legislation mitigating criminal punishment reflects a determination that the 'former penalty was too severe' and that the ameliorative changes are intended to 'apply to every case to which it constitutionally could apply.'" (*People v. Buycks* (2018) 5 Cal.5th 857, 881.)

Assembly Bill 788 was enacted into law in September 2021 and went into effect on January 1, 2022, while this appeal was still pending. Among other things, the legislation amended section 361.5(b)(13) by deleting language in the provision defining "'passive resistance" and added language defining "'passive resistance' as described in *In re B.E.*[, *supra*,] 46 Cal.App.5th 932."

8

In the parents' view, the juvenile court would not have bypassed services under the amended version of section 361.5(b)(13) now in effect. They therefore contend the amendment to section 361.5(b)(13) constitutes an ameliorative change in the law that should apply retroactively to them under the *Estrada*. We disagree.

To begin with, our Supreme Court has strongly suggested that *Estrada* does not apply "in the civil context" because its "rationale . . . bears little relationship to the determination of the retroactivity of most nonpenal statutes." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1210, fn. 15.) Mother and Father do not cite (and we cannot locate) any authority holding that the *Estrada* applies in dependency cases, which are civil proceedings. (*In re B.F.* (2010) 190 Cal.App.4th 811, 816.) The only dependency case that considered *Estrada*'s rule did not decide whether or not the rule applies in dependency proceedings, but instead held that the rule was "inapt" because the amended provision did not confer on parents or minors any benefit "akin to a lesser punishment in the criminal context." (*In re Raymond E.* (2002) 97 Cal.App.4th 613, 616.)

So too here. Dependency cases are civil proceedings that are designed to protect the child, not prosecute the parent. (*In re B.F.*, *supra*, 290 Cal.App.4th at p. 816.) Section 361.5(b)(13), in its previous and current form, allows the juvenile court to bypass reunification services for the parent or guardian of a dependent child under specific circumstances. Section 361.5(b)(13) is intended to protect dependent children and further their best interests by "exempt[ing] from reunification services those parents who are

9

unlikely to benefit." (*In re Joshua M.* (1998) 66 Cal.App.4th 458, 474; *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744-744 [observing that section 361.5, subdivision (b) reflects the Legislature's conclusion that reunification services may be "fruitless" and not beneficial to the child because of a parent's circumstances].)

As with the entire dependency statutory scheme, amended section 361.5(b)(13) is intended to benefit dependent children, not punish their parents. Thus, by amending section 361.5(b)(13), the Legislature did not confer a benefit on Mother or Father "akin to a lesser punishment in the criminal context." (*In re Raymond E.*, *supra*, 97 Cal.App.4th at p. 616.) Nor did the amendment "mitigat[e] the punishment for a particular criminal offense." (*People v. Brown* (2012) 54 Cal.4th 314, 324.) We therefore conclude *Estrada* does not apply here. As a result, the amendment to section 361.5(b)(13) has no bearing here.

We agree with Mother and Father that is unclear whether the juvenile court found that their circumstances had changed. However, the trial court did not abuse its discretion by finding that reunification services were not in the best interests of the children. (See *In re N.F.*, *supra*, 68 Cal.App.5th at p. 120 [section 388 petitioner "bears the burden of showing that there is new evidence or changed circumstances *and* that the proposed modification would be in the best interests of the child," italics added].)

"[A]fter the court has bypassed or terminated reunification services and set the matter for a section 366.26 hearing, the focus of the case shifts from the parents' interest in the care, custody, and companionship of the child to the needs of the child for

10

permanency and stability. [Citation.] A court entertaining a section 388 petition at this stage in the proceedings 'must recognize this shift of focus in determining the ultimate question before it, that is, the best interest of the child.'" (*In re N.F.*, *supra*, 68 Cal.App.5th at p. 121.)

By the time of the October 4, 2021 hearing on the section 388 petitions, A. and An. had spent virtually their entire young lives in their foster parents' home. Four-year-old Ar. had lived with her parents only between the time she was returned to their care in her first dependency case (August 2018) and her removal in this proceeding (March 2020).

The children's foster parents had provided for all of their needs, wanted to adopt them, and considered them "a cherished part of their family." The children are bonded with their foster parents and "are easily comforted by them." The foster parents are committed to providing the children with a permanent, safe, and loving home. By all accounts, the children are thriving in their foster parents' home.

On the other hand, the children have had limited contact with their parents. Father made few attempts to contact the children, and had limited interactions with them when Mother called them. Father frequently did not call or answer for his phone visits with the children. Mother and Father did not visit with the children in person between July 2020 and March 2021, and did not have visits with them of any kind in December 2020 or January 2021. In total, they had about 18-20 visits with the children during the dependency proceedings, none of which were unsupervised. As of March 2021, Mother

thought Ar. was "forgetting" her. An. "'stare[d]'" at the parents as if she did not know who they were at an in-person visit in March 2021. As the juvenile court put it, Ar. "had an opportunity to be parented by her parents" for only about 18 months as an infant, while An. and A. never had that opportunity.

On this record, the juvenile court reasonably found that Mother and Father "failed to establish that [the children's] 'best interests in *permanency and stability* would be furthered by' derailing the child[ren]'s adoption."[5] (*In re N.F.*, *supra*, 68 Cal.App.5th at p. 122.) As a result, we reject Father's argument that his trial counsel was ineffective.[6] (See *People v. Hart* (1999) 20 Cal.4th 546, 624 [to establish ineffective assistance of counsel "'prejudice must be affirmatively proved'"].)

B. *Excluding Foster Mother's Testimony*

Mother and Father contend the juvenile court violated their federal due process rights by refusing to allow the children's foster mother to testify. We disagree.

---

[5] Father notes that there was a presumption against reunification because the juvenile court bypassed reunification services and placed the children in foster care. He argues that the court would not have bypassed reunification services under newly amended section 361.5(b)(13), and thus there would not have been a presumption against reunification at the section 366.26 hearing. We need not address the issue because the presumption applied at the time of the hearing.

[6] Although Mother joins in Father's arguments on appeal, they had different trial counsel. To the extent Mother argues her trial counsel was ineffective, we reject the argument because, like Father, she cannot show she was prejudiced by her counsel's alleged ineffectiveness.

At an April 2021 hearing, Father's counsel stated that she intended to call the children's foster mother to testify at section 366.26 hearing in order to dispute the social worker's testimony about the nature of the parents' visits with the children. The juvenile court explained that it would not let the foster mother testify at the hearing unless there was "an offer of proof and briefing" concerning any dispute between the social worker and the parents' about the visits and the dispute could be resolved only by the foster mother's testimony.

Mother and Father did not object to the ruling and never argued that it violated their due process rights at any point in the proceedings. They therefore forfeited their argument, raised for the first time on appeal, that the juvenile court denied them due process by excluding the foster mother's testimony. (See *People v. Saunders* (1993) 5 Cal.4th 580, 589-590 [constitutional right may be forfeited in criminal case if not asserted in trial court]; *People v. Patton* (2019) 41 Cal.App.5th 934, 946 ["An as-applied constitutional challenge is forfeited unless previously raised."].)

In any event, Mother and Father fail to show that they were prejudiced by the exclusion of the foster mother's testimony. According to Mother and Father, the foster mother's "third-party" testimony was "essential" to establish that the parental bond exception to adoption applied. But Mother and Father do not identify *any* specific testimony the foster mother could have given that likely would have affected the juvenile court's decisions. Their conclusory argument that the juvenile court would have ruled differently had the foster mother testified is insufficient to show that they were prejudiced

13

by her exclusion. (See *People v. Gonzalez* (2021) 12 Cal.5th 367, 409 [rejecting argument with "no explanation" and "state[d] in conclusory fashion"]; see also *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [appellate court may disregard "points . . . argued in conclusory form"].) We therefore conclude "[i]t is not reasonably likely [the foster mother's] testimony would have persuaded the court to grant the section 388 petitions and offer reunification services to parents." (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081) Regardless, "[i]t did not violate [the parents'] due process rights to base the decision on the [388 petition] on the basis of information provided in the petition, documentary evidence, and argument by counsel." (*In re E.S.* (2011) 196 Cal.App.4th 1329, 1340.)

IV.

DISPOSITION

The juvenile court's orders denying Mother and Father's section 388 petitions and terminating parental rights are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

SLOUGH
J.

FIELDS
J.

14